UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MRS. UNITED STATES NATIONAL PAGEANT, INC., | |
| Plaintiff, | **COMPLAINT** |
| vs. | JURY TRIAL DEMANDED |
| STEPHANIE L. WILLIAMS, CROWN GARLAND LLC, and COSMOS INTERNATIONAL PAGEANTS, INC. | Case No. |
| Defendants. | |

Plaintiff, Mrs. United States National Pageant, Inc. ("Plaintiff"), by its attorneys, Leclair Korona Cole LLP, for its complaint against the defendants, alleges as follows:

## PRELIMINARY STATEMENT

1.     This action involves defendants individually and collectively misappropriating Plaintiff's intellectual property and infringing in conscious disregard upon the superior rights of Plaintiff's well-established trademarks causing consumer, contestant and spectator confusion, as well as defendants unlawfully and egregiously interfering with plaintiff's business relationships and contracts with sub-licensees, sponsors, and customers, and defendants Crown Garland, LLC and Stephanie L. Williams' breaches of their contracts with plaintiff.

## PARTIES, JURISDICTION AND VENUE

2.     Plaintiff Mrs. United States National Pageant, Inc. ("Plaintiff") is a corporation duly organized under the laws of the State of New York, with its principal office located at located at 11 Whitewood Lane, Rochester, Monroe County, New York, 14618.

3.     On information and belief, defendant Stephanie L. Williams ("Williams") is an individual residing at 23180 Kestrel Drive, Bristol, Virginia, 24201.

4.      On information and belief, defendant Crown Garland, LLC ("Crown Garland") is a Virginia limited liability company with its principal office located at 23180 Kestrel Drive, Bristol, Virginia, 24202, and its sole member and manager is Williams.

5.      On information and belief, defendant Cosmos International Pageants, Inc. ("Cosmos") is a corporation duly organized under the laws of the State of Virginia, with its principal office located at 23180 Kestrel Drive, Bristol, Virginia, 24202, and its sole Director is Williams.

6.      This action is, in part, one for defendants' infringement of Plaintiff's trademarks, actionable under 15 U.S.C. §§ 1114 and 1125(a); and one for misappropriation of trade secrets under 18 U.S.C. § 1836.  Federal question jurisdiction in this Court is founded upon 28 U.S.C. § 1331.

7.      This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).  Plaintiff's state law claims share common operative facts with her federal law claim, and the parties are identical.  Resolving all state and federal claims in a single action serves the interests of judicial economy, convenience and fairness to the parties.

8.      This Court also has original jurisdiction over this civil action based upon diversity of citizenship under 28 U.S.C. § 1332(a), in that Plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000.00.

9.      Personal jurisdiction over defendants Williams and Crown Garland is proper because: (i) these defendants have transacted business in New York, and the exercise of such jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the

United States Constitution; and (ii) these defendants consented to the jurisdiction of this Court.

10.     Additionally, personal jurisdiction over all defendants is proper because: (i) defendants transacted business in New York State; (ii) defendants committed tortious acts causing injury to persons within New York, regularly do and solicit business in New York, engage in a persistent course of conduct in New York, and derive substantial revenue from services rendered in New York, and expect or should reasonably expect to have consequences in New York and derive substantial revenue from interstate commerce; and (iii) because of defendants' purposeful availment of the New York market, such that jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

11.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, and in which defendants are subject to this court's personal jurisdiction in this action.

12.     Venue is also proper as to defendants Williams and Crown Garland because these defendants consented to the exclusive venue of courts located in the County of Monroe, State of New York.

## BACKGROUND

13.     Plaintiff's President, Isabella Ilacqua, first became involved in the pageantry business in 1985 and has continuously developed, grown and operated beauty pageants up to the present day. Plaintiff owns, and its various pageants are known and operated under, the following U.S. Federally Registered Trademarks:

3

(1)   MRS. UNITED STATES NATIONAL PAGEANT® - U.S. TM Reg. No. 1851722
(2)   MRS. UNITED STATES® - U.S. TM Reg. No. 2083350
(3)   LITTLE MISS UNITED STATES® - U.S. TM Reg. No. 4027072
(4)   MISS PRE-TEEN UNITED STATES® - U.S. TM Reg. No. 4469152
(5)   MISS JUNIOR TEEN UNITED STATES® - U.S. TM Reg. No. 3234362
(6)   MISS TEEN UNITED STATES® - U.S. TM Reg. No. 3234363
(7)   MISS UNITED STATES® - U.S. TM Reg. No. 3428292
(8)   MS. UNITED STATES® - U.S. TM Reg. No. 2157123
(9)   MS. WOMAN UNITED STATES® - U.S. TM Reg. No. 4669675

These trademarks are collectively referred to herein as "Plaintiff's Trademarks."

14.    Every year for the past 32 years, across the country and in New York state, Plaintiff has planned, organized and conducted pageants where contestants enter to compete for title holder status in the trademarked categories.

15.    The criteria for contestants to enter to compete for title holder status in the trademarked categories includes the following:

| TITLE | AGE | CRITERIA |
| --- | --- | --- |
| MRS. UNITED STATES® | 21 years and over | Currently married |
| MISS UNITED STATES® | 20 to 29 years | Never married, never had children |
| MS. UNITED STATES® | 20 to 29 years | Currently not married, previously married, may or may not have had children |
| MS. WOMAN UNITED STATES® | 30 years and over | Currently not married, previously married, never married, may or may not have had children |
| MISS TEEN UNITED STATES® | 16 to 19 years | Never married, never had children |
| MISS JUNIOR TEEN UNITED STATES® | 13 to 15 years | |
| MISS PRE-TEEN UNITED STATES® | 10 to 12 years | |
| LITTLE MISS UNITED STATES® | 8 to 9 years | |

16.     For each trademarked category above, on an annual basis, across the country and in New York State, Plaintiff holds preliminary pageants wherein contestants compete for a title at the local level; Plaintiff then holds annual state pageants wherein the preliminary titleholders compete for state titleholder status in each trademarked category in New York and multiple other states; and Plaintiff subsequently holds an annual MRS. UNITED STATES NATIONAL PAGEANT®, during which the state titleholders in each trademarked category compete for national title holder status in that category.

17.     Each contestant in the preliminary, state, and national pageants pays an entry fee and ad book fee in order to register and compete in the particular pageant.

18.     During the annual MRS. UNITED STATES NATIONAL PAGEANT®, the winner of each trademarked category is crowned as the national titleholder for that category for the preceding year, and is awarded a crown and sash that prominently state the trademarked title category.

19.     Plaintiff held its thirty-second annual MRS. UNITED STATES NATIONAL PAGEANT® from July 3, 2018 to July 7, 2018 in Orlando, Florida.

20.     Plaintiff owns and has operated websites to advertise its pageants under the following domain names ("the Plaintiff's Websites"):

    www.mrsunitedstates.com
    www.missunitedstates.com
    www.msunitedstates.com
    www.missteenunitedstates.com
    www.missjuniorteenunitedstates.com
    www.littlemissunitedstates.org
    www.missunitedstatespageants.com
    www.littlemissunitedstatespageant.com
    www.missjrteenunitedstatespageant.com
    www.misspreteenunitedstatespageant.com
    www.missteenunitedstatespageant.com
    www.missunitedstatespageant.com

www.mswomanunitedstatespageant.com
www.unitedstatesnationalpageants.com
www.unitedstatespageants.com
www.unitedstatespageant.com

21.     Plaintiff's Trademarks and Plaintiff's Websites were created at great expense to Plaintiff over many years and it clearly owns the exclusive rights to the recognition and goodwill associated therewith.

**PLAINTIFF HAS GENERATED SIGNIFICANT GOODWILL**

22.     Over the years, Plaintiff has earned a reputation for professional excellence, personal attention to its pageant contestants and winners, and integrity in its business dealings and as such, has earned the respect of many people working in the pageant industry.

23.     Plaintiff has, over the course of its more than thirty-two years in business, advertised and otherwise promoted its pageants throughout the Unites States market and, as a result, Plaintiff's pageants and associated Plaintiff's Trademarks have developed significant name recognition and goodwill throughout the pageantry business and have attained famous status.

24.     These advertising and other promotional efforts have been undertaken at great expense for the purpose of developing and perpetuating name recognition and goodwill among existing and prospective contestants, spectators, vendors and business partners.

25.     These advertising and promotional efforts have been effective, and the Plaintiff's Trademarks are all associated with no one other than Plaintiff MRS. UNITED STATES NATIONAL PAGEANT, INC.

## DEFENDANTS WILLIAMS AND CROWN GARLAND'S
## LICENSING AGREEMENTS

26.     Williams has been associated with Plaintiff for the past ten years, having served as a mother of a titleholder, a regional director, a multi-state director, and a national director.

27.     Williams' official role as a National Director with respect to some of Plaintiff's trademarked pageants commenced when Mrs. USNP, as licensor, and Williams, as licensee, entered into a Pageant Licensing Agreement, dated November 16, 2016, wherein Mrs. USNP granted Williams a limited license to use the following trademarks for a limited duration and solely for the purposes set forth in the licensing agreement:

> LITTLE MISS UNITED STATES® - U.S. TM Reg. No. 4027072;
> MISS PRE-TEEN UNITED STATES® - U.S. TM Reg. No. 4469152 ;
> MISS JUNIOR TEEN UNITED STATES® - U.S. TM Reg. No. 3234362;
> MISS TEEN UNITED STATES® - U.S. TM Reg. No. 3234363;
> MISS UNITED STATES® - U.S. TM Reg. No. 3428292;
> MS. UNITED STATES® - U.S. TM Reg. No. 2157123; and
> MS. WOMAN UNITED STATES® - U.S. TM Reg. No. 4669675.

(Hereinafter referred to as the "2016 Licensing Agreement".)

28.     Subsequently, Mrs. USNP, as licensor, and Williams and Crown Garland, as licensee, entered into a Pageant Licensing Agreement, dated November 7, 2017, granting Williams and Crown Garland a limited license to use the following trademark for a limited duration and solely for the purposes stated in the licensing agreement:

> MRS. UNITED STATES® - U.S. TM Reg. No. 2083350.

(Hereinafter referred to as the "2017 Licensing Agreement".)

29.     The 2016 Licensing Agreement and the 2017 Licensing Agreement state that the licensee acknowledges the validity and exclusive ownership of the licensed trademarks by Plaintiff and that all permitted uses shall inure to the benefit of the Plaintiff.

30.    The 2016 Licensing Agreement and the 2017 Licensing Agreement state in part that the licensee will act as a National Director and will promote, finance and produce annual pageant competitions at the state and national levels according to Pageant Operating Standards set forth by Mrs. USNP; that Mrs. USNP has the right to update and modify the Pageant Operating Standards at any time; that Mrs. USNP shall provide revised and updated Pageant Operating Standards to the licensee; and that the licensee will adhere to the revised or updated Pageant Operating Standards immediately or as soon thereafter as is reasonably possible.

31.    The 2016 Licensing Agreement and the 2017 Licensing Agreement state that the licensee will receive all application and entry fees paid by the pageant contestants, and that the licensee will pay Plaintiff an annual National Director License fee, plus an additional fee for each contestant in the national pageant.

32.    The 2016 Licensing Agreement and the 2017 Licensing Agreement require the licensee to separately contract on behalf of Plaintiff with additional individuals as the "State Directors", who will be responsible for conducting their respective individual state pageants and will receive a limited sub-license of the applicable licensed trademarks in accordance with the Pageant Operating Standards.

33.    The 2016 Licensing Agreement and the 2017 Licensing Agreement further state that the licensee "shall be solely responsible for retaining, managing and communicating with the State Directors."

34.    Under the 2016 Licensing Agreement and the 2017 Licensing Agreement, Williams and Crown Garland remained responsible for promoting, financing and producing the annual national pageant for each trademarked title.

35.     On June 19, 2018, Plaintiff sent Williams and Crown Garland, by email and Federal Express, the Mrs. United States National Pageants® Pageant Operating Standards, labeled Form 100.3.A.

36.     On June 27, 2018, Plaintiff sent Williams and Crown Garland, by email and Federal Express, slightly revised Mrs. United States National Pageants® Pageant Operating Standards, labeled Form 100.3.B.

37.     The material terms of the United States National Pageants Pageant Operating Standards, labeled Form 100.3.A. and the United States National Pageants Pageant Operating Standards, labeled Form 100.3.B. are identical, and as such the documents are referred to collectively herein as the "Pageant Operating Standards".

38.     The Pageant Operating Standards state that during the term of the 2016 Licensing Agreement and the 2017 Licensing Agreement, and for two years following the termination or expiration of the respective agreement, Williams and Crown Garland will not directly or indirectly engage in any other business which conducts a competitive pageant or competition; will not otherwise compete with Plaintiff; and will not solicit or divert any contestants, sponsors, or title holders to any competitive pageant or competition.  (*See* ¶ 13.1 and Exhibit B thereto.)

39.     The Pageant Operating Standards also require Williams and Crown Garland to avoid fraud, deception, misrepresentation, and/or embarrassment, shame, ridicule, disparagement or liability of any type accruing to Plaintiff or Plaintiff's Trademarks.  (*See* ¶ 10.1.)

## WILLIAMS AND CROWN GARLAND'S PROCUREMENT
## OF UNITED STATES NATIONAL PAGEANT® STATE PAGEANT LICENSE
## AGREEMENTS

40.     In accord with their responsibilities under the 2016 Licensing Agreement and the 2017 Licensing Agreement, during the 2016-2017 and 2017-2018 pageant seasons, as Plaintiff's agent and licensee, Williams and Crown Garland procured contracts between Plaintiff and various individuals to act as State Directors, to run and operate the preliminary and state pageants in order to feed contestants into the annual national pageant competition held annually in July.

41.     The United States National Pageant® State Pageant License Agreements ("State Director Agreements") secured by Williams and Crown Garland prominently display Plaintiff's Trademarks on the cover page; state that they are entered between "MRS UNITED STATES NATIONAL PAGEANT, INC. by Crown Garland, LLC," as the licensor and the individual state director as the licensee.

42.     The State Director Agreements indicate that they were signed by Williams, as an agent for Plaintiff, the licensor, and by the individual state directors, as licensees.

43.     The State Director Agreements provide that, in exchange for payment of licensing fees, the individual state director is a sub-licensee of Plaintiff for the limited purpose of conducting preliminary pageants and state pageants in their respective states, for approximately one year.

44.     The State Director Agreements acknowledge the exclusive ownership of the Plaintiff's Trademarks, which are specifically identified in Exhibit A to each of the agreements.

45.     The State Director Agreements state that during the term of the agreement and for two years following the termination or expiration of the respective agreement, the State Director will not directly or indirectly engage in any other business which conducts a competitive pageant or competition; will not otherwise compete with Plaintiff; and will not solicit or divert any contestants, sponsors, or title holders to any competitive pageant or competition.  (*See* ¶ 14.1 and Exhibit B thereto.)

46.     The State Director Agreements further provide that the State Directors will require each state titleholder (or their parent/guardian if a minor) to execute a contract stating the titleholder's duties during their annual reign as the titleholder, including prohibiting certain top titleholders from competing in any other pageant during their reign, and requiring the titleholders to participate in public appearances and other events to publicize Plaintiff's pageants (the "Titleholder Agreements").

47.     On information and belief, Williams, Crown Garland, and the State Directors, as Plaintiff's licensees and agents, procured Titleholder Agreements between Plaintiff and each of the titleholders during the 2017 to 2018 pageant season.

**TERMINATION OF THE 2016 AND 2017 LICENSING AGREEMENTS**

48.     The 2017 Licensing Agreement expired by its terms on the day following the 2018 National Pageant, falling on July 8, 2018.

49.     On May 24, 2018, Williams, individually and as the owner of Crown Garland, issued a letter to Plaintiff stating: she was also terminating the 2016 Licensing Agreement on July 8, 2018 (the day after the 2018 National Pageant); all rights held by Williams or Crown Garland to Plaintiff's intellectual property would terminate as of July 8, 2018; that Williams would deliver all intellectual property and other materials as contractually required to Plaintiff

on or before that date; and that all amounts payable under the 2016 and 2017 Licensing Agreements would be paid in full on or before the termination date.

50.     The 2016 Licensing Agreement and the 2017 Licensing Agreement provide that, upon the termination or expiration of said agreement, any rights of Williams or Crown Garland to the use of Plaintiff's Trademarks and Plaintiff's proprietary information ceases, and Williams and Crown Garland must return to Plaintiff all intellectual property, web pages, social media, confidential materials, and all other materials generated using Plaintiff's Trademarks and/or generated on behalf of plaintiff during the term of the agreements.

## WILLIAMS' AND CROWN GARLAND'S BREACHES OF THE LICENSING AGREEMENTS DURING THE 2018 NATIONAL PAGEANT

51.     Pursuant to the Licensing Agreements, Williams and Crown Garland were responsible for promoting, financing, and producing Plaintiff's 2018 National Pageant, which was held between July 3, 2018 and July 7, 2018.

52.     As stated, the term of Williams and Crown Garland's Licensing Agreements with Plaintiff terminated as of July 8, 2018, the day after the Plaintiff's 2018 National Pageant concluded.

53.     On information and belief, during the term of the 2016 and 2017 Licensing Agreements, and prior to the 2018 National Pageant, Williams and Crown Garland began activities to work for or on behalf of organizations producing pageants in direct competition with defendant, namely defendant Cosmos and the Miss Arnold Teen Fitness Pageant.

54.     The Virginia State Corporation Commission's web site indicates that the Articles of Incorporation forming Cosmos as a Virginia corporation were filed on February 12, 2018, listing Williams as the sole director and listing Cosmos' principal office as Williams and Crown Garland's address.

55.     On information and belief, Cosmos was created by Williams for the sole purpose of running a competing pageant system, with nearly identical state and national pageants and divisions.

56.     The website arnoldpageant.com indicates that as of November 20, 2017, Williams was named as the National Director of the Miss Arnold Teen Fitness Pageant.

57.     On information and belief, Williams joined the Miss Arnold Teen Fitness Pageant as the National Director solely for the purpose of running a pageant system that competes with Plaintiff with nearly identical state and national pageants and divisions.

58.     Just before the start of the 2018 National Pageant, Williams and Crown Garland issued a letter to Plaintiff directing Plaintiff not to attend its own National Pageant, stating that if Plaintiff's personnel attempted to attend Plaintiff's own pageant, they would be trespassing in violation of Florida law.

59.     The cease and desist letter was sent in direct contravention and in breach of the parties' licensing agreements, including the 2017 Licensing Agreement, which actually requires Williams and Crown Garland to provide Plaintiff and its representatives with reasonable accommodations for the duration of the pageant at the subject venue.

60.     Williams and Crown Garland issued the cease and desist letter to Plaintiff in an attempt to discourage Plaintiff from attending the 2018 National Pageant, so that Plaintiff would not witness Williams and Crown Garland's improper use of the pageant to disparage Plaintiff, promote Defendants' competing pageants, and otherwise fail to produce the pageant in good faith in breach of the licensing agreements.

61.     During Plaintiff's 2018 National Pageant, Williams and Crown Garland actively worked to disparage Plaintiff and its Trademarks, while inappropriately promoting

their new business endeavors of the Cosmos pageants and the Miss Arnold Teen Fitness Pageant in an attempt to directly procure Plaintiff's contestants and state directors, as follows:

  A.  Williams and Crown Garland directed their attorney to issue a "cease and desist letter" to Plaintiff advising that Plaintiff's principals were not permitted to attend Plaintiff's 2018 National Pageant;

  B.  Williams verbally advertised Cosmos pageants by speaking about Cosmos with contestants, their families, and the State Directors;

  C.  Williams told the contestants, their families, and the State Directors that Williams, Crown Garland, and the Plaintiff's pageant system were "transitioning" to the Cosmos pageant system;

  D.  Williams and Crown Garland distributed to contestants, their families, and State Directors the Summer 2018 issue of Pagentry magazine featuring the Miss Arnold Teen Fitness Pageant prominently on the cover, and containing an article titled "The Sport of Queens" regarding the Miss Arnold Teen Fitness Pageant, including an interview with Williams, listed as the pageant's National Director, and stating that she and Crown Garland are "proud to join the Arnold Sports Festival Team . . ."; and also featuring a full page color advertisement for Cosmos International Pageants;

  E.  Williams played a video during the Plaintiffs' 2018 National Pageant on two separate occasions that was a commercial promoting Cosmos' pageants to the audience, contestants, and National Directors;

  F.  Williams prominently displayed the Crown Garland logo and failed to display Plaintiff's logo in violation of the Licensing Agreements;

G.      Williams failed to use Plaintiffs' Trademarks and logo in marketing materials in violation of the Licensing Agreements;

H.      Without Plaintiff's consent or knowledge, Williams failed to use the supplier for purchasing crowns approved by Plaintiff, and instead used a discounted supplier; and Williams instructed the sash supplier not to use the type of sash previously approved by Plaintiff, thereby providing the winning contestants with lesser quality crowns and sashes that did not contain the approved designs and logos.

## WILLIAMS' CONVERSION OF SOCIAL MEDIA

62.     Upon signing the State Director contracts, each State Director was granted administrator privileges for Facebook pages developed by or on behalf of Plaintiff for the various divisions of the Plaintiff's pageants held in that State Director's state.

63.     The State Directors utilized the Facebook pages as a significant marketing tool for prospective pageant contestants, in that a prospective contestant would click a link on the Facebook site to be directed to one of Plaintiff's websites, where she would then register as a paying contestant in the pageant of her choosing.

64.     Prior to the Plaintiff's 2018 National Pageant, Williams directed each State Director to also add Williams as a co-administrator for each of the Facebook pages.

65.     On information and belief, the State Directors added Williams as a co-administrator of the Facebook sites.

66.     Before the start of Plaintiff's 2018 National Pageant, Williams then removed Plaintiff's State Directors from "administrator" status, thereby blocking the State Directors from accessing or controlling the Facebook pages.

67.     On or after Plaintiff's 2018 National Pageant occurred, Williams converted each of Plaintiffs' Facebook pages, changing the profile name and image to that of Cosmos, but leaving the earlier posts bearing Plaintiff's Trademarks and containing comments and photographs that were originally entered by Plaintiff's State Directors or their followers.

68.     In this manner, it appears that Williams' entity Cosmos is now the owner of Plaintiffs' Trademarks and pageants.

69.     In so doing, Williams, Crown Garland and Cosmos also converted all of Plaintiff's Facebook friends and connections to Cosmos' friends and connections, thereby stealing Plaintiff's contact list and promotional abilities.

70.     Williams also removed the links on Plaintiff's Facebook sites that formerly allowed prospective customers to register as paying contestants in Plaintiff's pageants, and replaced them with links to Cosmos' web site, where the prospective contestants are able to register to pay and compete in Cosmos' pageants.

71.     This also constitutes the conversion of Plaintiff's prospective contestants into Cosmos' contestants, in that the prospective contestants are directed to Cosmos' website and sign-up page, rather than Plaintiff's website and sign-up page.

72.     On information and belief, the National Directors requested that Williams, Crown Garland, and Cosmos reinstate their credentials as administrators of these Facebook pages, and Williams, Crown Garland and Cosmos have refused to do so.

73.     Williams, Crown Garland, and Cosmos have utilized this same process to convert Plaintiff and its State Directors' other social media accounts on Snapchat, Instagram, and Twitter into Cosmos-branded pages, deceptively leaving Plaintiffs' postings and photographs in the timeline, so as to make it appear that Cosmos is now running Plaintiffs'

pageants, and converting the website/pageant sign-up links from Plaintiff's website to Cosmos' website.

## WILLIAMS' CONVERSION OF PLAINTIFF'S YOUTUBE CHANNELS AND VIDEOS

74.     Plaintiff maintains YouTube channels bearing Plaintiff's Trademarks and logos.

75.     As part of the competition for Plaintiff's annual national pageants, for the last several years, contestants have uploaded self-promotional videos on Plaintiff's YouTube channels, which are viewed by the judges during the National Pageant.

76.     The contestants in the 2018 National Pageant likewise uploaded personal videos to promote themselves to the judges prior to the pageant.

77.     Just prior to the 2018 National Pageant, Williams and Crown Garland altered the contestants' videos and deleted the sound on Plaintiff's YouTube channels, so that the contestants' videos would not play with sound when viewed by the judges and others.

78.     On information and belief, during the 2018 National Pageant, Williams told the contestants that their videos did not have sound due to issues with the "transition" from Plaintiff's pageant system to the Cosmos pageant system.

79.     Following the 2018 National Pageant, Williams and Crown Garland deleted all of the Plaintiff's contestants' 2018 YouTube videos from Plaintiff's YouTube channels, including all of the comments posted regarding those videos.

80.     Following termination of the 2016 Licensing Agreement and the 2017 Licensing Agreement, Williams and Crown Garland have also failed to turn over the administrative rights to Plaintiff's YouTube channels to Plaintiff.

81. The administrative rights to Plaintiff's YouTube channels, and the videos posted on Plaintiff's YouTube channels, are the property of Plaintiff.

## WILLIAMS' CONVERSION OF PLAINTIFF'S WEB SITES

82. As the National Director under the 2016 and 2017 Licensing Agreements, Plaintiff allowed Williams to act as the administrator with respect to a number of its websites.

83. The 2016 Licensing Agreement and 2017 Licensing Agreement require Williams to return the control of all websites to Plaintiff upon the termination or expiration of said agreement.

84. On November 6, 2017, Williams confirmed via email that she would return all of the websites created by or on behalf of Plaintiff in her control or possession within the two weeks leading up to the 2018 National Pageant.

85. To date, Williams and Crown Garland have failed to return or provide administrative rights to the following web sites currently in these defendants' possession and control:

www.missunitedstatespageants.com
www.littlemissunitedstatespageant.com
www.missjrteenunitedstatespageant.com
www.misspreteenunitedstatespageant.com
www.missteenunitedstatespageant.com
www.missunitedstatespageant.com
www.mswomanunitedstatespageant.com
www.unitedstatesnationalpageants.com
www.unitedstatespageants.com
www.unitedstatespageant.com

86. Prior to the 2018 National Pageant, the web sites www.unitedstatespageants.com and www.unitedstatespageant.com contained information concerning Plaintiff's pageants and allowed contestants to sign up to participate in Plaintiff's pageant system.

87.     Just before or during the 2018 National Pageant, Williams and Crown Garland removed all content referencing Plaintiff or its trademarks, and removed all pages allowing contestants and potential contestants to sign up to participate with Plaintiff.

88.     The time period during and immediately following Plaintiff's National Pageant is historically a time when a significant number of new contestants sign up for the next year's pageants.

89.     The fact that contestants were not able to access these pages to sign up as future contestants negatively impacted Plaintiff's ability to sign future contestants.

90.     Presently, the site www.missunitedstatespageants.com indicates that it is available for sale by owner.

91.     Additionally, the sites www.missunitedstatespageant.com and www.unitedstatesnationalpageants.com redirect to a page that pictures Crown Garland's logo, and states:  "Farewell from Crown Garland LLC.  It has been our honor to be part of the United States National Pageants® for the last 10 years. Honoring Ms. Isabella's vision has always been our goal and passion and we are proud of the work we've done with this organization in growing it. We wish everyone the best!"

**WILLIAMS AND CROWN GARLAND'S ADDITIONAL BREACHES, INFRINGEMENT, AND MISAPPROPRIATION FOLLOWING TERMINATION OF THE LICENSING AGREEMENTS**

92.     Following termination of the 2016 Licensing Agreement and 2017 Licensing Agreement, Williams and Crown Garland have further violated the terms of their agreements, and state and federal laws by:

A.     Failing to return to Plaintiff all materials, including without limitation documents (whether electronic or in hard copy), files, forms, and databases, which were

19

generated during the term of the subject Licensing Agreements and/or generated utilizing Plaintiff's Trademarks, including without limitation financial records, logos, promotional items, marketing materials, program books, video recordings, and contracts entered during the term of the agreements, including contracts into with sponsors, suppliers, and hotels. (See 2017 Licensing Agreement, ¶¶ II(c), II(j), III(e); 2016 Licensing Agreement ¶¶ II(c), II(j), II(k); and Pageant Operating Standards ¶¶ 7.1(5), 11.2 and Ex. B);

B.      Failing to provide Plaintiff the contestant rolls, constituting each pageant participant's name, address, phone number, email, date of birth, and the state they represented for the 2018 Mrs., Miss, Ms., Ms. Woman, Miss Teen, Miss Jr. Teen, Miss Pre-Teen, and Little Miss United States National Pageants.  (See 2017  Licensing Agreement, ¶ II(j); 2016 Licensing Agreement, ¶¶ II(c), II(j), II(k); Pageant Operating Standards ¶ 7.1, and Ex. B);

C.      Failing to provide Plaintiff with the State Director List and Contestant Lists following the termination of the agreements.  (See 2017  Licensing Agreement, ¶ II(j); 2016 Licensing Agreement, ¶¶ II(c), II(j), II(k); Pageant Operating Standards ¶ 7.1, and Ex. B);

D.      Failing to transfer to Plaintiff all telephone numbers in defendants' possession which were created by or on behalf of Plaintiff.  (See 2017 Licensing Agreement, ¶¶ II(c), II(j), III(e); 2016 Licensing Agreement, ¶¶ II(c), II(k); Pageant Operating Standards ¶ 7.1(7) and Ex. B); and

E.      Failing to remit all amounts due and owing as licensing fees for each contestant in the 2018 National Pageants, and to account for same.

## WILLIAMS, CROWN GARLAND, AND COSMOS' FALSE STATEMENTS AND INTERFERENCE WITH PLAINTIFF'S STATE DIRECTORS

93.     Williams, Crown Garland, and Cosmos have further engaged in a scheme to fraudulently induce Plaintiff's State Directors to terminate their relationship with Plaintiff and sign contracts as state directors for Cosmos, in direct competition with Plaintiff.

94.     Williams perpetrated this scheme by contacting Plaintiff's State Directors and falsely and fraudulently advising that the State Director Contracts prohibit the State Directors from working with Plaintiff and competing with Williams and Crown Garland.

95.     In furtherance of this scheme, on July 4, 2018, during the 2018 National Pageant, Williams sent an email to all of Plaintiff's State Directors, under the subject "Urgent Notice to All Directors," stating that Williams had attorneys onsite, overseeing the "transition" of Plaintiff's pageants to Cosmos, and threatening the State Directors with legal action if they communicated with or continued to work with Plaintiff or Plaintiff's principal Anthony Ilacqua, and further disparaging Plaintiff and Mr. Ilacqua.

96.     The July 4, 2018 email from Williams to the National Directors stated, in part:

Hello everyone.

As you may or may not know, my attorneys are onsite and overseeing the final transition and legal issues that I am having with Mr. Ilacqua. In discussing the state director contracts with my local counsel, some key items were brought to my attention that I need to share with you for your own protection . . .
To my knowledge, the only non-compete agreement you have is strictly in your agreement with my company and not with the Mrs. United States National Pageants, Inc. organization or Mr. Ilacqua . . .

•       When you signed your agreement, you agreed that during the term of your agreement with me "or at any time after that, you will not communicate, divulge or use for the benefit of any other person, persons, partnership, proprietorship, association, corporation, or entity, any confidential information, knowledge,

trade secrets or know-how concerning the organizations of operation, services, products, programs, contestants, delegates, sponsors, judges, spectators, or practices of Licensee…which may be communicated to me, whether orally, in writing, electronically or by any other means."

• This constitutes "Confidential Information" and no director - regardless of their future plans - is allowed to discuss or disclose anything regarding how you ran your state pageant with Mr. Ilacqua or any other third party . . .

• Additionally, you agree that you will "at no time copy, duplicate, record or otherwise reproduce any of the Confidential Information or material containing it…to any unauthorized person." Mr. Ilacqua is an unauthorized person. . . .

• Finally, when you signed the contract you agreed as follows: . . . I further agree to pay all costs and expenses (including reasonable attorneys' and experts' fees) incurred by Licensor in connection with the enforcement of those covenants not to compete set forth in this Agreement." This means that if you breach the agreement and I have to bring legal action against you, you have to pay my attorneys' fees.

. . . Your participation in ANY conversations with Mr. Ilacqua regarding how you ran your pageants, how I run my company, and anything having to do with the organization constitutes a breach of your contract that could result in legal action against you.

It is important that I point this out as I am aware that many of you A) have been told that you had to turn these items over when legally you absolutely cannot turn anything over to him without breaching your signed contract, or B) have planned to meet with Mr. Ilacqua this week while here at my pageant. I also know many of you have already had discussions with him or participated in his polls about your practices and this dialogue does constitute a breach. . . .

97.     The July 4, 2018 email also states that it was signed by Williams individually as Plaintiff's National Director, as the Owner of Crown Garland, and as the "Official License Holders and Producers of the Miss United States Pageant & Miss Arnold Teen Fitness Pageant."

98.    The statements in Williams and Crown Garland's July 4, 2018 email cited above are entirely false.

99.    In actuality, Plaintiff's State Director Contracts prohibit Plaintiff's State Directors from competing with Plaintiff during the term of the agreements and for two years thereafter.

100.    Eight of Plaintiff's former State Directors for the 2017-2018 year have refused to sign a new contract with Plaintiff and instead have signed up as state directors for Cosmos, as follows:  Teri Brown-Walker; Tina Chisholm; Kim and Augie Tulba; Jillian Spano; Sharon McInnes; Renee Austin; Summer Blalock; and Melissa Sullivan.

101.    This harmed Plaintiff's business because Plaintiff has had to expend resources to locate and sign new state directors and to train new state directors.

102.    These eight State Directors have also refused to turn over Plaintiff's tangible property and intellectual property to Plaintiffs, including without limitation the Contestant Lists and information regarding prospective contestants, following the termination of their State Director Agreements, in direct violation of their State Director Agreements.

103.    On information and belief, these eight State Directors left Plaintiff's organization and signed contracts with Cosmos, and have failed to turn Plaintiff's tangible and intellectual property over to Plaintiffs, because of the false and disparaging misrepresentations made by Williams, Crown Garland, and Cosmos with respect to the State Directors' contractual obligations and with respect to the quality of Plaintiff and its pageants and operations.

104.    On information and belief, Williams, Crown Garland, and Cosmos have also induced Plaintiff's reigning state titleholders to breach their Titleholder Agreements with

Plaintiff by:   making false statements to Plaintiff's titleholders that the titleholders are permitted to enter competing pageants during their reign as Plaintiff's titleholders and that the titleholders are not permitted to fulfill their other responsibilities to Plaintiff to engage in public appearances and other promotional activities; and inducing Plaintiff's titleholders to breach their Titleholder Agreements by entering pageants that compete directly with the Plaintiff and by refusing to engage in public appearances and other promotional activities on behalf of Plaintiff.

**FIRST CAUSE OF ACTION**
**TRADEMARK INFRINGEMENT, 15 USC § 1114**

105.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 99 above as if fully set forth herein.

106.    The federal registration of Plaintiff's Trademarks described above is uncontestable.

107.    Plaintiff's use of Plaintiff's Trademarks occurred prior to the use by defendants.

108.    Without the consent, license or authority of Plaintiff, defendants Williams, Crown Garland, and Cosmos have been marketing and selling in interstate commerce competing pageants using Plaintiff's Trademarks, including by converting Plaintiff's Facebook and other social media accounts on the internet to new profiles to advertise for Comsos pageants while maintaining Plaintiffs' Trademarks in earlier posts on the same site, and posting advertisements for Crown Garland on websites bearing the names of Plaintiff's Trademarks.

109.    Defendants have been advertising, promoting and marketing their competing pageants in the United States using Plaintiff's Trademarks.

110.    Defendants performed the above-described acts knowingly, intentionally, willfully, maliciously and with the intent: (i) to trade upon Plaintiff's goodwill and reputation; (ii) to confuse and deceive consumers, constituting current and prospective pageant contestants, as to the source and origin of Plaintiff's pageants and services; and (iii) to seize control of Plaintiff's Trademarks.

111.    Defendants acted in bad faith and knowingly, willfully, and deliberately used Plaintiff's Trademarks with the intent to deceive the public and injure their competitors, including Plaintiff.

112.    Defendants have committed and, unless enjoined by this Court, will continue to commit the infringing acts alleged above, with full knowledge of Plaintiff's prior rights in its Trademarks, with willful and intentional disregard of Plaintiff's rights.

113.    Defendants' use of the infringing marks as described above has caused and, unless enjoined by this Court, will continue to cause confusion in the mind of consumers as to the relationship or affiliation between the parties.

114.    By reason of defendants' acts and practices in violation of the Lanham Act, 15 U.S.C. § 1114(1), as set forth above, plaintiff has suffered and will continue to suffer injury and damages.

115.    By reason of defendants' conduct, defendants have caused, and, unless such practices are enjoined by the Court, will continue to cause, immediate and irreparable harm to Plaintiff for which there is no adequate remedy at law, and Plaintiff is entitled to an injunction restraining defendants Williams, Crown Garland, and Cosmos, and each of their agents, employees, representatives and all persons acting in concert with them, from engaging in further violations of the Lanham Act.

116. Plaintiff is also entitled to recovery of actual damages, disgorgement of defendants' profits, treble damages, the costs of the action, and attorney's fees.

## SECOND CAUSE OF ACTION
## TRADEMARK INFRINGEMENT, 15 U.S.C. § 1125

117. Plaintiff repeats and realleges the allegations of paragraphs 1 through 99 above as if fully set forth herein.

118. The federal registration of Plaintiff's Trademarks described above is uncontestable.

119. Plaintiff's use of Plaintiff's Trademarks occurred prior to the use by defendants.

120. Defendants Williams, Crown Garland, and Cosmos have sold or offered for sale its goods and services bearing Plaintiff's Trademarks with the intent to deceive, mislead and confuse consumers, including pageant contestants and prospective contestants, into believing that there is a single source of all pageants and pageant services, activities and goods bearing Plaintiff's Trademarks.

121. Such conduct causes consumers, purchasers, and prospective purchasers to believe that Plaintiff is in some way connected with defendants or their businesses, and is designed to take advantage of the reputation and good will of Plaintiff and Plaintiff's Trademarks.

122. Defendants' use of Plaintiff's Trademarks is likely to cause confusion to consumers as to the source, origin, sponsorship or affiliation of Plaintiff's regional, state, and national pageant system.

123. Defendants acted in bad faith and knowingly, willfully, and deliberately used Plaintiff's Trademarks with the intent to deceive the public and injure their competitors, including Plaintiff.

124.    Defendants have committed and, unless enjoined by this Court, will continue to commit the infringing acts alleged above, with full knowledge of Plaintiff's prior rights in its Trademarks, with willful and intentional disregard of Plaintiff's rights.

125.    Defendants' use of the infringing marks as described above has caused and, unless enjoined by this Court, will continue to cause confusion in the mind of consumers as to the relationship or affiliation between the parties.

126.    By reason of defendants' acts and practices in violation of the Lanham Act, 15 U.S.C. § 1125, as set forth above, plaintiff has suffered and will continue to suffer injury and damages.

127.    By reason of defendants' conduct, defendants have caused, and, unless such practices are enjoined by the Court, will continue to cause, immediate and irreparable harm to Plaintiff for which there is no adequate remedy at law, and Plaintiff is entitled to an injunction restraining defendants Williams, Crown Garland, and Cosmos, and each of their agents, employees, representatives and all persons acting in concert with them, from engaging in further violations of the Lanham Act.

128.    Plaintiff is also entitled to recovery of actual damages, disgorgement of defendants' profits, treble damages, the costs of the action, and attorney's fees.

### THIRD CAUSE OF ACTION
### TRADEMARK INFRINGEMENT, NEW YORK GBL §§ 360-K, 360-L, 360-M

129.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 99 above as if fully set forth herein.

130.    Defendants used, without Plaintiff's consent, reproductions of Plaintiff's marks in connection with the sale and advertising of services offered by Defendants and Defendants' businesses to consumers in New York State and other states, and such use is

likely to cause confusion or mistake or to deceive consumers as to the source of origin of such goods and services.

131.    Defendants acted with the intent to cause confusion or mistake and to deceive.

132.    The Defendants' conduct in the actions above violates general principles of law and equity, constitutes trade name infringement, unfair competition and injury to business reputation under New York General Business Law §§ 360-K, 360-L, and 360-M, and have, and will cause, Plaintiff irreparable injury.

133.    Defendants' use of Plaintiff's Trademarks is likely to cause confusion to consumers as to the source, origin, sponsorship or affiliation of Plaintiff's regional, state, and national pageant system.

134.    Defendants acted in bad faith and knowingly, willfully, and deliberately used Plaintiff's Trademarks with the intent to deceive the public and injure their competitors, including Plaintiff.

135.    Defendants have committed and, unless enjoined by this Court, will continue to commit the infringing acts alleged above, with full knowledge of Plaintiff's prior rights in its Trademarks, with willful and intentional disregard of Plaintiff's rights.

136.    Defendants' use of the infringing marks as described above has caused and, unless enjoined by this Court, will continue to cause confusion in the mind of consumers as to the relationship or affiliation between the parties.

137.    Defendants' trade name infringement, unfair competition, and injury to Plaintiff's business reputation was committed with the intent to cause confusion or mistake or to deceive.

138.    By reason of defendants' conduct, defendants have caused, and, unless such practices are enjoined by the Court, will continue to cause, immediate and irreparable harm to Plaintiff for which there is no adequate remedy at law, and Plaintiff is entitled to an injunction restraining defendants Williams, Crown Garland, and Cosmos, and each of their agents, employees, representatives and all persons acting in concert with them, from engaging in further use the Plaintiff's Trademarks.

139.    Plaintiff is also entitled to recovery of actual damages, disgorgement of defendants' profits, treble damages, the costs of the action, and attorney's fees.

## FOURTH CAUSE OF ACTION
## UNFAIR COMPETITION

140.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 99 above as if fully set forth herein.

141.    Defendants Williams, Crown Garland, and Cosmos, intentionally, and without the permission of Plaintiff, misrepresented Plaintiff's Trademarks and pageants as their own, and additionally used Plaintiff's Trademarks and the Plaintiff's trade names in commerce to sell and advertise pageant services offered by Defendants and their companies in order to compete with Plaintiff.

142.    Defendants' actions have misappropriated the goodwill and reputation of Plaintiff that took decades to develop.

143.    Defendants have acted in bad faith and has knowingly, willfully, and deliberately engaged in the above-described false advertising and deceptive acts and practices, with the intent to injure Plaintiff and deceive the public.

144.    Defendants have damaged Plaintiff by engaging in false advertising and other deceptive acts and practices by, among other things, intentionally causing confusion and

deceiving consumers and the public, thereby causing prospective pageant contestants to register for pageants with Defendants and Defendants' companies instead of Plaintiff, thereby reducing Plaintiff's market share.

145. As a result of the actions of defendants Williams, Crown Garland, and Cosmos, Plaintiff has suffered damages and is entitled to recover, plus disbursements.

## FIFTH CAUSE OF ACTION
## DECEPTIVE ACTS AND PRACTICES, NY GENERAL BUSINESS LAW § 349

146. Plaintiff repeats and realleges the allegations of paragraphs 1 through 99 above as if fully set forth herein.

147. Defendants Williams, Crown Garland, and Cosmos have engaged in a consumer-oriented pattern and practice of deceptive acts and practices aimed at the public at large by making false and misleading representations about Plaintiff's business and its Trademarks, and by converting Plaintiffs' social media and web sites in an effort to confuse contestants and funnel contestants to pay to enroll as contestants in Defendants' pageants.

148. Defendants have materially misled prospective pageant contestants by luring them through false and misleading advertising and inducing them into paying to enter as contestants in Defendants' pageants, and by leading consumers to believe that Defendants' pageants are under similar ownership or control or are similar in stature, age, or reputation to Plaintiff's pageants, which is not true.

149. Defendants' acts have injured the public by causing prospective customers to pay to enter defendants' pageants as contestants based on misleading and incorrect information regarding defendants' business, namely defendants' deceptive acts making it appear that defendants' and their companies are related to Plaintiff's business and

Trademarks, and that defendants' pageants are similar in stature, age, or reputation to Plaintiff's pageants, which is not true.

150.    As a result of Defendants' acts, Plaintiff, as a competitor of defendants, has suffered and will continue to suffer damages to its business reputation and goodwill and the loss of customers.

151.    Defendants' conduct is willful, because defendants know that the false and misleading representations about Plaintiff and its pageants are materially false.

152.    The above-described acts constitute deceptive acts and practices, in violation of Section 349 of the New York General Business Law.

153.    By reason of defendants' conduct, defendants have caused, and, unless such practices are enjoined by the Court, will continue to cause, immediate and irreparable harm to Plaintiff for which there is no adequate remedy at law, and Plaintiff is entitled to an injunction restraining defendants Williams, Crown Garland, and Cosmos, and each of their agents, employees, representatives and all persons acting in concert with them, from engaging in further deceptive acts.

154.    Plaintiff is also entitled to recovery of damages, the costs of the action, and attorney's fees.

## SIXTH CAUSE OFACTION
## MISAPPROPRIATION OF TRADE SECRETS – 18 U.S.C. § 1836
### (Williams & Crown Garland)

155.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 99 above as if fully set forth herein.

156.    As the Plaintiff's National Director, defendants Williams and Crown Garland had access to numerous trade secrets of Plaintiff, including without limitation its lists of

names, address, telephone numbers, and email addresses of its State Directors (the "State Director List"), and its lists of names, addresses, telephone numbers, email addresses, date of birth, marital status, and parental status of contestants, including the names, addresses, telephone numbers, and email addresses of minor contestants' parents and guardians (collectively the "Contestant Lists").

157.   As pe the terms of Plaintiff's State Pageant License Agreements executed by the National Directors, the 2016 Licensing Agreement and the 2017 Licensing Agreement, including the Pageant Operating Standards incorporated therein, the State Director List and the Contestant Lists constitute confidential information of Plaintiff, which Plaintiff prohibits its National Director and State Directors from distributing to the public.

158.   Defendants Williams and Crown Garland misappropriated Plaintiff's trade secrets, including without limitation Plaintiff's State Director List and Contestant Lists.

159.   Plaintiff's State Director List and National Director List are maintained as confidential by Plaintiff, are not known outside of plaintiff's business, are kept secret within plaintiff's business, and are only disclosed to employees as necessary.

160.   Plaintiff's State Director List and Contestant Lists are not readily ascertainable by outsiders to the business.

161.   Plaintiff has taken precautionary measures to preserve the secrecy of its State Director List and Contestant Lists, including by ensuring that its National Director and State Directors maintain the confidentiality of this information.

162.   Plaintiff has expended considerable time, effort, and money in developing the State Director List and Contestant Lists, including without limitation by contracting with defendants Williams and Crown Garland as a National Director to procure the State Director

List in exchange for valuable compensation, and in contracting with the State Directors to procure the Contestant Lists in exchange for valuable consideration.

163.    The State Director Lists and Contestant Lists afford the Plaintiff an essential competitive edge in the marketplace and are important to the continuing operations of its business.

164.    Defendants Williams and Crown Garland acquired Plaintiff's trade secrets by retaining them and refusing to turn them over following the termination of their Licensing Agreements; acquired and are using the trade secrets in violation of their confidential relationship with Plaintiff as Plaintiff's National Director; and acquired and are using the trade secrets in breach of the 2016 Licensing Agreement, the 2017 Licensing Agreement, and the Pageant Operating Standards incorporated therein.

165.    Plaintiff's trade secret is related to a service used in, and intended for use in, interstate commerce, in that Plaintiff's State Director List and Contestant Lists contain information regarding State Directors and contestants in multiple states including New York State, for the purpose of providing a national pageant system wherein contestants in different states compete for the national title.

166.    Defendants' Williams and Crown Garland's conduct as described above constitutes the misappropriation of Plaintiff's trade secrets pursuant to 18 U.S.C. § 1836.

167.    By reason of Williams and Crown Garland's conduct, defendants have caused, and, unless such practices are enjoined by the Court, will continue to cause, immediate and irreparable harm to Plaintiff for which there is no adequate remedy at law, and Plaintiff is entitled to an injunction restraining defendants Williams, Crown Garland, and Cosmos, and

each of their agents, employees, representatives and all persons acting in concert with them, from further misappropriation of Plaintiff's trade secrets.

168.     Plaintiff is also entitled to recovery of actual damages, disgorgement of Williams and Crown Garland's profits, payment of a reasonable royalty for defendant Williams and Crown Garland's unauthorized use of Plaintiff's trade secrets, exemplary damages of two times the amount of damages awarded, attorney's fees, and the costs of the action.

**SEVENTH CAUSE OF ACTION**
**MISAPPROPRIATION OF TRADE SECRETS**
**(Williams & Crown Garland)**

169.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 99 and 151 through 159 above as if fully set forth herein.

170.     Defendants Williams and Crown Garland's conduct as described above constitutes the misappropriation of Plaintiff's trade secrets pursuant to New York law.

171.     By reason of Williams and Crown Garland's conduct, defendants have caused, and, unless such practices are enjoined by the Court, will continue to cause, immediate and irreparable harm to Plaintiff for which there is no adequate remedy at law, and Plaintiff is entitled to an injunction restraining defendants Williams, Crown Garland, and Cosmos, and each of their agents, employees, representatives and all persons acting in concert with them, from further misappropriation of Plaintiff's trade secrets.

172.     Plaintiff is also entitled to recovery of actual damages, disgorgement of Williams and Crown Garland's profits, and the costs of the action.

## EIGHTH CAUSE OFACTION
## BREACH OF THE 2016 LICENSING AGREEMENT AND THE 2017 LICENSING AGREEMENT
### (Williams and Crown Garland)

173.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 99 above as if fully set forth herein.

174.    Williams and Crown Garland breached the 2016 Licensing Agreement and the 2017 Licensing Agreement by, among other things:

(A)    failing to promote, finance and produce state and national beauty pageants, including the 2018 National Pageant, for Plaintiff in good faith;

(B)    failing to promote, finance and produce state and national beauty pageants for Plaintiff pursuant to the Pageant Operating Standards;

(C)    utilizing Plaintiff's Trademarks, trade secrets, confidential and proprietary information, State Director Lists, and Contestant Lists for purposes other than the promotion or operation of Plaintiff's pageants, including for the benefit of competing pageants;

(D)    failing to include in all national and state promotions, advertising, and publicity for the pageants produced under these agreements a notice prominently displayed in easily readable size that the pageants are affiliated with and under license from the Mrs. United States National Pageant;

(E)    improperly including the names and logos of Williams' entities Crown Garland and Cosmos, rather than that of Plaintiff, in promotional, advertising, and publicity materials;

(F)     making     disparaging,     false,     and     untrue     statements     and misrepresentations  about  Plaintiff  and  its  business  operations  to  the  State  Directors, contestants, prospective contestants, customers, and prospective customers;

(G)     failing to provide an accounting indicating the number of contestants for each pageant, the states represented, and the resulting fees due to Plaintiff;

(H)     failing to remit all contestant fees due to Plaintiff;

(I)     failing to remit daily copies of videos taken during the 2018 National Pageant;

(J)     failing to turn over all videos and photographs taken during the 2018 National pageant;

(K)     failing to cease all use of Plaintiff's Trademarks and related names, logos, trade secrets, State Director Lists, Contestant Lists, tangible goods, intellectual property, web sites, social media sites, and telephone numbers following the termination of the agreements;

(L)     failing to turn over all files, forms, databases, and other materials relating to Plaintiff's pageants at the termination of the agreements;

(M)     failing to turn over all State Director Lists and Contestant Lists at the termination of the agreements;

(N)     failing to transfer all web sites, social media sites (Facebook, You Tube, Twitter, Snap Chat, Instagram), and telephone numbers to Plaintiff's control following termination of the agreements;

(O)     failing to allow State Directors to perform under their contracts in good faith by deleting the State Directors' administrator rights under their respective social media

sites, failing to allow new or recurring contestants to sign up as customers during the 2018 to 2019 pageant season, and removing contestants' materials from YouTube during the 2018 National Pageant;

(P)     failing to maintain general liability insurance as required under the agreements;

(Q)     directly and indirectly engaging in other business which conducts a competitive pageant or competition during and after the term of the subject agreements; and

(R)     diverting contestants, sponsors, titleholders, and other business to competitive pageants and competitions during and after the term of the subject agreements.

175.    By reason of the foregoing, Plaintiff has sustained damages in an amount to be determined at trial.

176.    Plaintiff is entitled to the recovery of damages, attorney's fees, and costs.

## NINTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH PLAINTIFF'S CONTRACTS

177.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 99 above as if fully set forth herein.

178.    Defendant Williams, individually and on behalf of her entities defendants Crown Garland and Cosmos, was at all times aware of the State Director Agreements, under which the State Directors agreed to conduct the preliminary and state pageants in their respective states.

179.    Williams, who is Crown Garland and Cosmos' principal, was required to procure the very State Director Agreements at issue, and Williams executed the State Director Agreements as Plaintiff's agent.

180.    The State Director Agreements provide in part that each State Director is required to comply with the following provisions:

(A)    during the term of the agreement and for two years after the termination of the expiration of the agreement, the State Director will not directly or indirectly engage in any other business which conducts a competitive pageant or competition and will not divert any contestants, sponsors, titleholder, or other business to any competitive pageant or competition (State Director Agreement, ¶ 14.1);

(B)    at any time, including following termination of the agreement, the State Director will divulge or use any confidential information of Plaintiff, including trade secrets, knowledge, know-how concerning the operation, contestants, titleholders, sponsors, judges, spectators or practices of Plaintiff (State Director Agreement, ¶¶ 13.1, 19.1(10); and

(C)    upon termination of the agreement, the State Director will discontinue use of all of Plaintiff's Trademarks, return all materials, and assign and transfer to Plaintiff all  domain names and the administration of social media accounts (State Director Agreement, ¶¶ 13.1, 19.1).

181.    Williams, Crown Garland, and Cosmos intentionally interfered with the Director Agreements, causing breaches by the State Directors, by, among other things, performing the following actions:

(A)    falsely advising the State Directors that their State Director Agreements prohibit them from working for Plaintiff and competing with Williams and Crown Garland;

(B)    inducing the State Directors to terminate their relationship with Plaintiff and enter into similar agreements with Cosmos based on the false statement that the State Directors were contractually limited to working with Cosmos;

(C)     falsely telling the State Directors that the State Director Agreements prohibit them from returning Plaintiff's materials, web sites, and social media sites, to Plaintiff;

(D)     falsely telling the State Directors that they are prohibited from communicating with Plaintiff verbally or in writing under the terms of the State Director Agreements;

(E)     threatening the State Directors with entirely baseless legal actions including the recoupment of attorney's fees in the event that the State Directors continue to work for or on behalf of Plaintiff, communicate with Plaintiff, or turn Plaintiff's materials over to Plaintiff;

(F)     disparaging Plaintiff, its operations, and its pageants in emails, in person, and during the 2018 National Pageant;

(G)     inducing the State Directors to compete with Plaintiff by working for or on behalf of Cosmos;

(H)     inducing the State Directors to provide defendants with Plaintiff's trade secrets and confidential information including lists of contestants and the contestants' addresses, telephone numbers, email addresses, ages, and other identifying information, and for the minor contestants' their parents or guardians addresses, telephone numbers, and email addresses;

(I)     inducing the State Directors to refrain from returning all materials to Plaintiff and from transferring to Plaintiff all domain names and administrative rights to social media sites, and instead demanding that the State Directors turn these materials, domain names, and social media sites to defendants.

182.   Williams, Crown Garland, and Cosmos caused at least eight of Plaintiff's former State Directors for the 2017-2018 year to breach their State Director Agreements by entering into contracts with Cosmos to act as Cosmos' state directors and/or agents, including the following persons:  Teri Brown-Walker; Tina Chisholm; Kim and Augie Tulba; Jillian Spano; Sharon McInnes; Renee Austin; Summer Blalock; and Melissa Sullivan.

183.   The eight former Plaintiff's State Directors referenced above have further breached their agreements with Plaintiff by failing to turn over Plaintiff's confidential information and trade secrets, including the lists of contestant information, and have failed to return all materials to Plaintiff and to transfer to Plaintiff all of Plaintiff's domain names and administrative rights to Plaintiff's social media sites.

184.   On information and belief, these eight State Directors left Plaintiff's organization and signed contracts with Cosmos because of fraudulent and disparaging misrepresentations made by Williams, Crown Garland, and Cosmos with respect to the State Directors' contractual duties and with respect to the quality of Plaintiff and its pageants.

185.   This harmed Plaintiff's business because Plaintiff has had to expend resources to locate and sign new state directors and to train new state directors.

186.   This further harmed Plaintiff's business because Plaintiff's new state directors have to start over with respect to recruiting and compiling lists of contestants and potential contestants and obtaining their contact and other identifying information.

187.   On information and belief, Williams, Crown Garland, and Cosmos have also intentionally interfered with Plaintiff's Titleholder Agreements by contacting Plaintiff's titleholders and falsely telling them that they are allowed to enter competing pageants and

that they are not obligated to perform their other duties for Plaintiff related to marketing and publicity of Plaintiff's pageants.

188.    Defendants Williams, Crown Garland, and Cosmos intentionally interfered with Plaintiff's contractual relationships for the sole purpose of causing Plaintiff's former State Directors and Plaintiff's titleholders to compete directly with Plaintiff for the benefit of Williams, Crown Garland, and Cosmos.

189.    Defendants' conduct in perpetrating the tortious interference with the State Director Agreements and the Titleholder Agreements was wanton, reckless, malicious, and evinced a high degree of immorality, in that defendants intentionally misrepresented the terms of the State Director Agreements and Titleholder Agreements in an attempt to subvert to their own use in direct competition with Plaintiff the experienced State Directors themselves, the titleholders, the materials, domain names, and social media sites in the State Directors' possession or control, and the contestant information cultivated by the State Directors during their contract with Plaintiff.

190.     Plaintiff is entitled to recovery of actual damages, punitive damages, and the costs of the action.

**TENTH CAUSE OF ACTION**
**INJURIOUS FALSEHOOD**

191.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 99 above as if fully set forth herein.

192.    Defendant Williams, individually and on behalf of Cosmos and Crown Garland, knowingly issued false and misleading information regarding the State Director Agreements and Plaintiff to all of the State Directors, and regarding the Titleholder

Agreements to Plaintiff's titleholders, maliciously and with the intent to harm Plaintiff and benefit Cosmos and Crown Garland.

193.   A reasonably prudent person would or should anticipate that economic damage to Plaintiff would naturally flow from defendants' false statements.

194.   As a result of defendants' actions, Plaintiff sustained damages resulting from the loss of present or prospective economic advantage, namely the loss of eight State Directors, the loss of confidential and proprietary materials including the lists of information concerning Plaintiff's contestants and minor contestants' parents or guardians, internet domain names, and administrator rights to social media sites, and the loss of the titleholders' services in connection with publicity and marketing of Plaintiff's pageants.

195.   Defendants acted with intent and malice in seeking to usurp Plaintiff's licensees, goodwill, materials, trade secrets, and contestants for defendants' own benefit.

196.   Plaintiff is entitled to recovery of actual damages, punitive damages, and the costs of the action.

**ELEVENTH CAUSE OF ACTION**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL**
**RELATIONS**

197.   Plaintiff repeats and realleges the allegations of paragraphs 1 through 99 above as if fully set forth herein.

198.   Plaintiff had a business relationship with its State Directors, contestants, and titleholders during the 2018 pageant season that created an expectancy of future contract rights with the State Directors, contestants, and titleholders.

199.   Defendant Williams, individually and on behalf of Crown Garland and Cosmos, interfered with Plaintiff's business relationship with its State Directors, contestants,

and titleholders by disparaging Plaintiff to State Directors, contestants, and titleholders; advertising for defendants' new pageant business Cosmos during the Plaintiff's 2018 National Pageant; falsely inducing the State Directors to enter into contracts for the upcoming pageant season with Cosmos rather than Plaintiff; falsely inducing the State Directors not to return Plaintiff's materials, lists of contestant information, internet domains, and social media administrative rights to Plaintiff; falsely inducing Plaintiff's titleholders to compete against Plaintiff by entering defendants' pageants and to refuse to provide marketing and promotional services to Plaintiff during their reigning year; and by defendants' failure to return materials, lists of contestant information, internet domains, and social media administrative rights to Plaintiff.

200.    Defendants intended to harm the Plaintiff by converting Plaintiff's contractual relations to Cosmos.

201.    Defendants used wrongful means to interfere with Plaintiff's prospective contractual relationships by making false disparaging comments about Plaintiff and its operations to the State Directors, contestants, and titleholders; by making false statements regarding contractual obligations to the State Directors and titleholders; by threatening baseless legal action against the State Directors; and by intentionally failing to produce Plaintiff's 2018 National Pageant according to the required standards in good faith.

202.    As a result of defendants' egregious wrongful acts, Plaintiff has suffered economic injury, including the loss of opportunities for profit on business diverted away from Plaintiff.

203.    Plaintiff is entitled to recovery of actual damages, punitive damages, and the costs of the action.

## TWELFTH CAUSE OF ACTION
### CONVERSION
### (Williams and Crown Garland)

204.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 99 above as if fully set forth herein.

205.    The Plaintiff has a possessory right in its own personal property, including without limitation both tangible and intellectual property constituting Plaintiff's State Director Lists, Contestant Lists, internet domain names, social media sites, and telephone numbers.

206.    Defendants Williams and Crown Garland, intentionally and without authority, have assumed control over personal property belonging to Plaintiff, including without limitation Plaintiff's State Director Lists, Contestant Lists, internet domain names, social media sites, and telephone numbers, by refusing to return and turn said materials over to the Plaintiff.

207.    Williams and Crown Garland's actions as described above constitute an unauthorized assumption and exercise of the right of ownership or dominion over Plaintiff's property to the exclusion of Plaintiff's rights over its property.

208.    Williams and Crown Garland have further converted Plaintiff's web sites and social media sites for their own use by deleting Plaintiff's content thereon and replacing it with logos, user names, and content advertising their related entity Cosmos, in direct competition with Plaintiff.

209.    The property converted by Williams and Crown Garland is irreplaceable.

210.    Williams and Crown Garland's conversation of Plaintiff's property was intentional and accompanied by malice, insult, and reckless and willful disregard of Plaintiff's

rights in that these defendants knew that they were wrongfully converting Plaintiff's property to benefit their related entity Cosmos in direct competition with the Plaintiff's business.

211.    Williams and Crown Garland's actions have caused damages to Plaintiff, including the loss of good will, damage to Plaintiff's reputation, lost profits, costs associated with procuring and training new state directors, costs associated with procuring new contestant lists, and the loss of business.

212.    Plaintiff is entitled to recovery of actual damages, special damages, punitive damages, and the costs of the action.

## THIRTEENTH CAUSE OF ACTION
## REPLEVIN/ORDER OF SEIZURE

213.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 99 above as if fully set forth herein.

214.    As stated, defendants Williams, Crown Garland, and Cosmos are in possession of Plaintiff's property, including its domain names, administrative access to its social media pages, its telephone numbers, its State Director Lists, and its Contestant Lists.

215.    Pursuant to the terms of the 2016 Licensing Agreement and the 2017 Licensing Agreement, defendants were required to return Plaintiff's property at the time of the termination of said agreements.

216.    Accordingly, Plaintiff is entitled to a judgment of possession of its property and issuance of an Order awarding return of all of Plaintiff's property to Plaintiff, constituting transferring of its domain names, transfer of administration of its social media sites (Facebook, You Tube, Twitter, Instagram, Snap Chat), transfer of its telephone numbers, and delivery of its State Director Lists, State Director Agreements, and Contestant Lists.

## FOURTEENTH CAUSE OF ACTION
## UNJUST ENRICHMENT

217.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 99 above as if fully set forth herein.

218.    Defendants Williams, Crown Garland, and Cosmos continue to use Plaintiff's property, trade secrets, and Trade Marks, including its web pages, social media sites, State Director Lists, Contestant Lists, and telephone numbers, to procure business for defendants constituting state directors, pageant contestants, and pageant sponsors.

219.    On information and belief, defendants Williams, Crown Garland, and Cosmos have realized revenues from their illegal possession and use of Plaintiff's property and have been unjustly enriched in the amount of the value of Plaintiff's property and any income defendants realized or received due to their illegal possession of same.

220.    Accordingly, Plaintiff is entitled to a money judgment against defendants Williams, Crown Garland, and Cosmos in an amount to be determined at trial.

## FIFTEENTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY
### (Williams and Crown Garland)

221.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 99 above as if fully set forth herein.

222.    Plaintiff had a fiduciary relationship with Williams and Crown Garland in that Williams and Crown Garland had possession and control of Plaintiff's trade secrets and proprietary information, material bearing Plaintiff's Trademarks, web pages, telephone numbers, social media sites including Facebook, You Tube, Instagram, Twitter, and Snap Chat, State Director Lists, and Contestant Lists, which gave rise to a duty of loyalty on the

part of Williams and Crown Garland to Plaintiff, an obligation to act in the best interests of Plaintiff, and an obligation to act in good faith in any matter relating to Plaintiff.

223.    Defendants Williams and Crown Garland committed misconduct in advancing their own interests to the detriment of Plaintiff by disparaging Plaintiff and making false statements about Plaintiff's business, the State Director Contracts, and the titleholder contracts while acting as an agent of Plaintiff, by failing to return Plaintiff's proprietary material and information and its tangible and intellectual property thereby prohibiting Plaintiff from utilizing same; and by utilizing Plaintiff's tangible and intellectual property for the benefit of themselves and their related entity Cosmos and to the detriment of Plaintiff's business.

224.    Williams and Crown Garland's wrongdoing is and was intentional and evidences a high degree of moral turpitude and wanton dishonesty.

225.    Plaintiff has sustained damages as a direct result of Williams and Crown Garland's misconduct, including without limitation damage to their reputation, loss of goodwill, lost opportunities for profit, and lost profit, in an amount to be determined at trial.

226.    Accordingly, Plaintiff is entitled to a money judgment against defendants Williams, Crown Garland, and Cosmos for compensatory damages, lost profits, punitive damages, and costs.

WHEREFORE, Plaintiff demands judgment against Defendants Williams, Crown Garland, and Cosmos, as follows:

A.    For injunctive relief:

(i)    Enjoin Defendants from using Plaintiff's Trademarks and related names, logos, trade secrets, confidential and proprietary information, and tangible goods,

intellectual property, web sites and domain names, social media accounts (Facebook, YouTube, Snapchat, Instagram, and Twitter), telephone numbers, State Director Lists, and Contestant Lists;

(ii)    Enjoin Defendants from directly or indirectly engaging in other business which conducts a competitive pageant;

(iii)    Enjoin Defendants from directly or indirectly interfering with Plaintiff's State Director Agreements or from hiring, soliciting, recruiting, or working with Plaintiff's current or former State Directors in connection with any other business that conducts a competitive pageant;

(iv)    Enjoin Defendants from directly or indirectly interfering with Plaintiff's Titleholder Agreements; from advising Plaintiff's titleholders as to their duties toward Plaintiff; and from soliciting Plaintiff's active titleholders;

(v)    Enjoin Defendants from diverting Plaintiff's current or former contestants, sponsors, titleholders, and other business to competitive pageants and competitions;

(vi)    Enjoin Defendants from making false and/or disparaging statements regarding Plaintiff, its Trademarks, or its pageants or other operations;

(vii)    Require Defendants to issue appropriate corrective statements reasonably designed to reach all people to whom their false and misleading statements were disseminated, and retracting their false and misleading claims regarding Plaintiff, its Trademarks, its contracts with the State Directors, and its pageants and operations;

(viii)   Require Defendants to turn over to Plaintiff all files, forms, databases, and other materials relating to Plaintiff's pageants; the State Director Lists; and the Contestant Lists;

(ix)   Require Defendants to turn over all financial records relating to Plaintiff's pageants, including books, records, tax returns, and related supporting material, including cash receipts and credit and charge records;

(x)   Require Defendants to transfer all of Plaintiff's web sites and domain names, social media sites (Facebook, You Tube, Twitter, Snap Chat, Instagram), and telephone numbers to Plaintiff's control; and

(xi)   Require Defendants to turn over to Plaintiff any material that Defendants deleted from Plaintiff's websites or social media sites, including without limitation videos of contestants that were posted on Plaintiff's YouTube page.

B.   Order defendants Williams and Crown Garland to provide an accounting indicating the number of contestants for each pageant, the states represented, and the resulting fees due to Plaintiff;

C.   Award judgment against defendants Williams, Crown Garland, and Cosmos for compensatory damages, lost profits, disgorgement of Defendants' profits, trebled damages, attorney's fees, costs, prejudgment and post-judgment interest; and

D.   For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands

a trial by jury of all claims raised herein for which Plaintiff has a right to trial by jury.

Dated: August 13, 2018

**LECLAIR KORONA COLE LLP**

    s/ Paul L. Leclair
Paul L. Leclair, Esq.
Stacey E. Trien, Esq.
*Attorneys for Plaintiff*
28 E. Main Street, Suite 1500
Rochester, New York 14614
(585) 327-4100
pleclair@leclairkorona.com
strien@leclairkorona.com