UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
———————————————————————————

MRS. UNITED STATES NATIONAL PAGEANT, INC.,


                Plaintiff,

                       vs.               **DECLARATION OF**
                                       **ANTHONY ILACQUA**

                                       Case No. 6:18-cv-06587

STEPHANIE L. WILLIAMS, CROWN GARLAND LLC, and
COSMOS INTERNATIONAL PAGEANTS, INC.

                      Defendants.
———————————————————————————

STEPHANIE L. WILLIAMS, CROWN GARLAND LLC, and COSMOS
INTERNATIONAL PAGEANTS, INC.,

                    Third-Party Plaintiffs,

          v.

ANTHONY ILACQUA,

                    Third-Party Defendant.
———————————————————————————

      1.     I am the Director of Operations of Plaintiff, Mrs. United States National Pageant, Inc. ("Mrs. USNP"), the highest-ranking executive, and as such I am personally familiar with the facts set forth herein. This Declaration is submitted in support of Mrs. USNP's Motion for Summary Judgment.

      2.     This Declaration outlines the scheme orchestrated by Defendants Stephanie Williams ("Williams"), Crown Garland, LLC ("Crown Garland"), and Cosmos International Pageants, Inc. ("Cosmos") to breach Williams and Crown Garland's licensing agreements with Mrs. USNP and to wrongfully use and degrade Mrs. USNP's intellectual

property and brand. Williams and Crown Garland failed to pay amounts due under the subject licensing agreements; while simultaneously seizing control and preventing access to Mrs. USNP's websites and social media accounts to benefit their competing pageant companies. Williams and Crown Garland have wrongfully withheld other files and materials from Mrs. USNP. Significantly, Williams and Crown Garland have disparaged Mrs. USNP to State Pageant Directors, pageant contestants, and their families. Williams and Crown Garland have further misrepresented the legal obligations of State Pageant Directors to Mrs. USNP while intimidating them into working with their competing pageant companies.

## Background

3.     My mother, Isabella Ilacqua, is the owner of Mrs. USNP. She has been involved in pageantry business since 1985 and with her company has developed and operated beauty pageants throughout the country.

4.     Mrs. USNP owns, and its various pageants are known and operated under, the following U.S. Federally Registered Trademarks:

(1)  MRS. UNITED STATES NATIONAL PAGEANT® - U.S. TM Reg. No. 1851722
(2)  MRS. UNITED STATES® - U.S. TM Reg. No. 2083350
(3)  LITTLE MISS UNITED STATES® - U.S. TM Reg. No. 4027072
(4)  MISS PRE-TEEN UNITED STATES® - U.S. TM Reg. No. 4469152
(5)  MISS JUNIOR TEEN UNITED STATES® - U.S. TM Reg. No. 3234362
(6)  MISS TEEN UNITED STATES® - U.S. TM Reg. No. 3234363
(7)  MISS UNITED STATES® - U.S. TM Reg. No. 3428292
(8)  MS. UNITED STATES® - U.S. TM Reg. No. 2157123
(9)  MS. WOMAN UNITED STATES® - U.S. TM Reg. No. 4669675

True and correct copies of the Trademarks are attached as **Exhibit C**.

5.     For the past 32 years, across the country, Mrs. USNP has planned, organized and conducted pageants for contestants who enter to compete for titleholder status in the trademarked categories.

6.      For each trademarked category above, Mrs. USNP holds preliminary pageants where contestants compete for a title at the local level; Mrs. USNP then holds annual state pageants where the preliminary titleholders compete for state titleholder status in each trademarked category; and Mrs. USNP subsequently holds an annual MRS. UNITED STATES NATIONAL PAGEANT®, during which the state titleholders in each trademarked category compete for national title holder status in that category.

7.      Each contestant in the preliminary, state, and national pageants pays an entry fee and ad book fee in order to register and compete in the particular pageant.

8.      During the annual MRS. UNITED STATES NATIONAL PAGEANT®, the winner of each trademarked category is crowned as the national titleholder for that category and is awarded a crown and sash that prominently state the trademarked title category.

9.      Mrs. USNP held its thirty-second annual MRS. UNITED STATES NATIONAL PAGEANT® from July 3, 2018 to July 7, 2018 in Championsgate, Florida ("2018 National Pageant").

10.     Mrs. USNP owns and has operated websites to advertise its pageants including without limitation under the following domain names:

www.mrsunitedstates.com
www.missunitedstates.com
www.msunitedstates.com
www.missteenunitedstates.com
www.missjuniorteenunitedstates.com
www.littlemissunitedstates.org
www.missunitedstatespageants.com
www.littlemissunitedstatespageant.com
www.missjrteenunitedstatespageant.com
www.misspreteenunitedstatespageant.com
www.missteenunitedstatespageant.com
www.missunitedstatespageant.com
www.mswomanunitedstatespageant.com
www.unitedstatesnationalpageants.com

www.unitedstatespageants.com
www.unitedstatespageant.com

11.     Mrs. USNP's Trademarks, social media accounts and Websites were created at great expense to Mrs. USNP over many years and Mrs. USNP owns the exclusive rights to their recognition and goodwill.

**Licensing Agreements with Defendants Stephanie Williams and Crown Garland LLC**

12.     Williams was associated with Mrs. USNP for approximately ten years, having served in succession as a mother of a titleholder, a regional director, a multi-state director, and most recently as national director.

13.     Mrs. USNP, as licensor, and Williams and Crown Garland, as licensee, entered into their initial written Pageant Licensing Agreement, dated November 16, 2016 ("2016 Licensing Agreement"), granting Williams and Crown Garland a limited license to operate the National Pageant for the trademarked pageant categories numbered (3) through (9) above. A true and accurate copy of the 2016 Licensing Agreement is attached as **Exhibit D**.

14.     Subsequently, Mrs. USNP, as licensor, and Williams and Crown Garland, as licensee, entered into a second Pageant Licensing Agreement, dated November 7, 2017 ("2017 Licensing Agreement"), granting Williams and Crown Garland a limited license to use the Mrs. United States Trademark numbered (2) above. A true and accurate copy of the 2017 Licensing Agreement is attached as **Exhibit E**.

15.     Williams executed both the 2016 Licensing Agreement and 2017 Licensing Agreement individually and on behalf of her company Crown Garland LLC.  (Ex. D; Ex. E.)

16.     Under both the 2016 Licensing Agreement and 2017 Licensing Agreement, Williams and Crown Garland LLC agreed to abide by Pageant Operating Standards which

are incorporated into both licensing agreements by reference.

17.     A true and accurate copy of the Pageant Operating Standards is attached as **Exhibit HH**.

18.     Under the 2016 and 2017 Licensing Agreements, Williams and Crown Garland were responsible for promoting, financing, and producing fair and unbiased annual pageant competitions for each of the pageant categories.  (See Ex. D, 2016 Licensing Agreement § II(a); Ex. E, 2017 Licensing Agreement § II(a).)

**Williams and Crown Garland's Procurement of State Director Contracts**

19.     Williams and Crown Garland were also required to procure contracts between Plaintiff and individuals at the state level to serve in the role of "State Director" and to be responsible for conducting individual state pageants as sub-licensees of Mrs. USNP's Trademarks (the "State Directors Agreements").  (See Ex. D, 2016 Licensing Agreement § II(b); Ex. E, 2017 Licensing Agreement § II(b).)

20.     The 2016 Licensing Agreement and the 2017 Licensing Agreement further state that the licensee "shall be solely responsible for retaining, managing and communicating with the State Directors." (See Ex. D., 2016 Licensing Agreement § II(b); Ex. E, 2017 Licensing Agreement § II(b).)

21.     During the 2016-2017 and 2017-2018 pageant seasons, as Mrs. USNP's agent and licensee, Williams and Crown Garland thus procured the State Director Agreements between Mrs. USNP and various individuals to act as State Directors, to run and operate the preliminary and state pageants to select contestants for the national pageant competition held annually in July.  The form State Director Agreements utilized by Williams and Crown Garland were initially drafted and provided by Mrs. USNP to Williams and Crown Garland.

Williams and Crown Garland revised these form State Director Agreements without getting approval from Mrs. USNP in violation of the Licensing Agreements. (See 2016 Licensing Agreement Ex. D § II(a), (b); Ex. E, 2017 Licensing Agreement § II(a), (b) requiring use of form contracts.)

22.    State Director Agreements executed by Katy Moody Cusick and Shena Dixon Mason prior to the 2018 National Pageant, which I understand to be representative samples of all State Director Agreements procured by Williams and Crown Garland are attached to these motion papers as Exhibits T and X, respectively.

23.    The State Director Agreements procured by Williams and Crown Garland prominently display Mrs. USNP's Trademarks on the cover page; and state that they are entered between "MRS UNITED STATES NATIONAL PAGEANT, INC. by Crown Garland, LLC," as the licensor and the individual state director as the licensee. Williams signed the State Director Agreements as an agent for Mrs. USNP, the licensor. (See Ex. T, p 33 and Ex. X, p 33.)

24.    The State Director Agreements provide: (A) that in exchange for payment of licensing fees, the individual state director is a sub-licensee of Mrs. USNP for the limited purpose of conducting preliminary pageants and state pageants in their respective states; (B) acknowledge the exclusive ownership of Mrs. USNP's Trademarks; and (C) require that the State Directors return all confidential information and materials to Mrs. USNP, including social media page administration and website domains. (See §§ 2.1, 4.1, 13.1 of Exs. T and X and Exs. A to the State Director Agreements.)

25.    The State Director Agreements further require that State Directors not directly or indirectly engage in any other business which conducts a competitive pageant or

competition; will not otherwise compete with Mrs. USNP; and will not solicit or divert any applicants, contestants, sponsors, or title holders to any competitive pageant or competition. (See §§ 14.1 of Exs. T and X.)

26.     The State Director Agreements further provide that the State Directors will require each state titleholder (or their parent/guardian if a minor) to execute a form contract setting forth the titleholder's duties during their annual reign as the titleholder, (the "Titleholder Agreements"). (See §§ 6.2; 8.3 of Exs. T and X.)

27.     A Titleholder Agreement provided to Miss North Dakota United States Emily Simmons prior to the 2018 National Pageant, which I understand to be a representative sample of all Titleholder Agreements procured by Williams and Crown Garland, is attached to these motion papers as Exhibit M. The Titleholder Agreement: (A) uses Mrs. USNP's Trademarks and logos; (B) prohibits titleholders in the Miss or Mrs. Divisions from competing in other pageants until the conclusion of their reigns; (C) requires these titleholders to "embrace and proudly promote the title" until it is passed on to a successor; and (D) requires titleholders to make a minimum of one charitable appearance per month. (See Simmons Decl., Ex. M, p 1.)

### Termination of the 2016 and 2017 Licensing Agreements

28.     The 2017 Licensing Agreement expired by its terms on the day following the 2018 National Pageant, July 8, 2018. (Ex. E, § I(a).)

29.     On May 24, 2018, Williams, individually and as the owner of Crown Garland, issued a letter to Mrs. USNP stating: she was also terminating the 2016 Licensing Agreement on July 8, 2018 (the day after the 2018 National Pageant); all rights held by Williams or Crown Garland to Mrs. USNP's intellectual property would terminate as of July 8, 2018; that

Williams would deliver all intellectual property and other materials as contractually required to Mrs. USNP on or before that date; and that all amounts payable under the 2016 and 2017 Licensing Agreements would be paid in full on or before the termination date. A true and accurate copy of this termination letter is attached as **Exhibit F**.

30.     The 2016 Licensing Agreement and the 2017 Licensing Agreement provide that all permitted uses of Plaintiff's Trademarks by the Licensee and the State Directors "shall inure to the benefit of [Mrs. USNP]," and upon the termination or expiration of said agreement, any rights of Williams or Crown Garland to the use of Mrs. USNP's Trademarks and Mrs. USNP's proprietary information cease, and Williams and Crown Garland must return to Mrs. USNP all intellectual property, web pages, social media, confidential materials, and all other materials generated using Mrs. USNP's Trademarks and/or generated on behalf of Mrs. USNP during the term of the agreements. (See Ex. D, 2016 License Agreement § II(c), (k); Ex. E, 2017 License Agreement §§ II(c), II(k), III(e).)

### Williams' Association with Competing Pageants

31.     Pursuant to the Licensing Agreements, Williams and Crown Garland were responsible for promoting, financing, and producing the 2018 National Pageant, which was held between July 3, 2018 and July 7, 2018. (See Ex. D, 2016 License Agreement § II(a); Ex. E, 2017 License Agreement § II(a).)

32.     Prior to the 2018 National Pageant, on or about February 12, 2018, Williams incorporated and accepted a position to direct pageants for a competing company, Cosmos International Pageants, Inc. ("Cosmos"). (See Leclair Decl., Ex. B.)

33.     On or about November 20, 2017, Ms. Williams also began working for another competing pageant company as the National Director of the Miss Arnold Teen Fitness Pageant.  (See Demanchick Decl., Ex. DD.)

34.     Both Cosmos and Miss Arnold Teen Fitness Pageant compete directly with Mrs. USNP pageants.

### 2018 National Pageant

35.     On June 28, 2018, just days before the 2018 Mrs. United States National Pageant, I received a "cease and desist" letter from an attorney representing Crown Garland, LLC and Williams stating that I was not allowed to attend the National Pageant and threatening that if I attended, I would be asked to leave by hotel security and would be committing the crime of trespass under Florida law.  A true and accurate copy of this letter is attached as **Exhibit G**.  The only reason cited in the letter for the demand was "the state of the current relationship between you and Ms. Williams . . ."  The demand was baseless.

36.     This demand was also contrary to the intent of the Licensing Agreements, under which Williams and Crown Garland were required to provide Mrs. USNP representatives hotel accommodations to attend the National Pageant. (Ex. E, 2017 Licensing Agreement § III (f).)  I was present at the hotel that hosted the 2018 National Pageant, but out of concern for a threatened arrest and an embarrassing scene by Williams and Crown Garland, I did not attend any of the National Pageant events.

37.     Despite the right I had to attend our own National Pageant, defendants sent the cease and desist letter because they did not want my team or me to observe their disparagement of Mrs. USNP and myself, and the promotion of their competing pageants.

38.     During the 2018 National Pageant, Williams spoke to the State Directors, Titleholders, and their families about Cosmos, and advertised both Cosmos and Miss Arnold Teen Fitness pageants. (See Decs. of Simmons, Lewellen, Cusick, and Mason.)

39.     As stated in the Declaration of Emily Simmons, Williams distributed an advertising program at the National Pageant that featured a letter disparaging Mrs. USNP. Williams also distributed *Pageantry* magazine promoting the Miss Arnold Teen Fitness Pageant. Titleholders and their families saw the materials distributed by Williams and Crown Garland at the National Pageant and could choose to enter those pageant systems in the future instead of Mrs. USNP pageants. (See Simmons Decl. Exs. R and S.)

40.     Further, without Mrs. USNP's consent or knowledge, Williams failed to use the supplier for purchasing crowns approved by Mrs. USNP, and instead used a discounted supplier and used non approved crowns for the National Queens; and Williams instructed the sash supplier not to use the quality of sash previously approved by Mrs. USNP, thereby providing the winning contestants with lesser quality crowns and sashes that did not contain the approved designs and logos. These decisions hurt the Mrs. USNP brand and required Mrs. USNP to repurchase all of the crowns and sashes.

41.     Williams and Crown Garland spread rumors throughout the week of the National Pageant that the Titleholders' safety was at risk. Williams and Crown Garland implied that I and/or other Mrs. USNP representatives put the Titleholders in physical danger. Williams and Crown Garland did nothing to dispel these baseless implications and may have perpetuated them. (See Simmons Decl. ¶¶ 23-25; Mason Decl. ¶ 9.)

42.     As detailed more fully in the Declaration of Emily Simmons, Titleholders from North Dakota requested to meet with me during the 2018 National Pageant week. I met with

them and they shared their concerns about Williams and Crown Garland's operation of the National Pageant, including that they were not treating all contestants fairly and equally.

## Inducement of State Directors and Titleholders

43.     As mentioned above, through her role as National Director with Mrs. USNP, Williams signed State Director Agreements as Mrs. USNP's agent, and was aware of the non-competition clauses.

44.     Despite this, Williams sent an email to the State Directors on July 4, 2018, misrepresenting the non-competition clause. In this email, a copy of which is attached to the motion papers as Exhibit V, Williams states that the State Directors are prohibited from competing with her company, Crown Garland LLC; that they may not continue to be associated with Mrs. USNP; and threatens retaliation comprised of legal action against these State Directors and the payment of Williams' and Crown Garland's attorneys' fees.  I believe Williams used this tactic to induce the State Directors to work for Cosmos.

45.     The statements were false and in direct contravention of the State Director Agreements that prohibit competition with Mrs. USNP, not Crown Garland. Again, Williams signed the State Director Agreements as an agent for Mrs. USNP, the licensor. (See §§ 14.1 and p 33, Exs. T and X.)

46.     Williams' July 4, 2018 email instructs the State Directors to not turn anything over to Mr. Ilacqua or Mrs. USNP. (Cusick Decl. Ex. V.)  This is in direct contravention of the State Director Agreements that require State Directors to return all confidential information and materials to Mrs. USNP, including social media page administration and website domains. (See §§ 13.1 of Exs. T and X.)

11

47.   The July 4, 2018 email also states that it was signed by Williams individually as Mrs. USNP's National Director, as the Owner of Crown Garland, and as the "Official License Holders and Producers of the Miss United States Pageant & Miss Arnold Teen Fitness Pageant," a clear attempt to promote the competing pageant and blur the lines between the pageants. (See Cusick Decl. Ex. V.)

48.   On July 7, 2018, I directed my assistant, Will Mellon, to send an email to the 2018 State Directors who had not yet re-signed with Plaintiff for the 2018-2019 pageant season, requesting the return of Plaintiff's information and material.  On July 7, 2018, Mr. Mellon sent the email to these state directors requesting, among other items: titleholder rolls; contestant rolls; assignment of all websites and social media associated with Mrs. USNP; sponsor information; and the return of other documents or materials provided by Mrs. USNP and/or Crown Garland. A true and accurate copy of the email from Mr. Mellon to these state directors is attached hereto as **Exhibit H**.

49.   Mr. Mellon's email prompted Williams to send a second threatening email to the State Directors on July 8, 2018 (the effective date of Williams' and Crown Garland's resignation) that threatens: "you are contractually bound only to Crown Garland and you have no direct contractual relationship with Mr. Ilacqua or the Mrs. United States National Pageant, Inc." This email further threatens legal action against the State Directors for cooperating with Mrs. USNP. (See Cusick Decl. Ex. W.)

50.   As a result of her actions, Williams induced the following Mrs. USNP State Directors, for twelve states, to become State Directors with Cosmos: Teri Brown-Walker (Maryland, District of Columbia, Delaware), Tina Chisholm (Florida), Kim and Augi Tulba (Hawaii), Jillian Spano (New York and New Jersey), Sharron McInnes and Renee Austin

(North Carolina and South Carolina), Summer Blalock (Tennessee and West Virginia), and Melissa Sullivan (Texas).  (See Crown Garland's Amended Counterclaims, ¶ 137.)

51.     These Directors represent seven of the twenty-six State Directors working for Mrs. USNP for the 2017-2018 pageant year. Williams and Crown Garland's actions harmed Mrs. USNP's business because we were forced to expend significant resources to recruit, review applications, interview, sign, and train new state directors who will conduct the state-level pageants in all twelve states that these seven state directors managed.   Williams and Crown Garland's actions also caused Mrs. USNP the loss of substantial goodwill and continuity of its directors, which has a significant impact on Mrs. USNP as this industry is largely reputation driven.

52.     The seven State Directors who left to work for Cosmos have refused to return Mrs. USNP's tangible property and intellectual property to Mrs. USNP, including without limitation Facebook pages, contestant lists, and information regarding prospective contestants in direct violation of their State Director Agreements.  (Additionally, following Williams' email communications referenced above, one other 2018 Mrs. USNP State Director, Donna Mason (Arizona), has refused to return Mrs. USNP's tangible and intellectual property.)

53.     Williams and Crown Garland have also induced Mrs. USNP's reigning state titleholders to breach their Titleholder Agreements by making false statements to Mrs. USNP titleholders about the status of Mrs. USNP and the Titleholder Agreements.

54.     For example, Sue Sollers ("Sollers") (Plaintiff's 2018 Mrs. District of Columbia), is presently competing with the Mrs. Essence Pageant. When my employee, Dacia Rutske ("Rutske"), contacted Sollers to advise that her competing activities violate her

Titleholder Agreement, Sollers responded by stating that Williams' agent told Sollers that she is no longer under contract with Mrs. USNP, and that her Titleholder Agreement is "null and void." A true and correct copy of the email communication showing Sollers' Facebook post is attached hereto as **Exhibit I**.

55.     On September 20, 2018, I received an email from Rutske attaching a letter that she received from Laura Myers, Esq. of the Wolford Law Firm, attorneys for defendants in this lawsuit, dated September 19, 2018, directing Rutske to "Cease and Desist" from making misrepresentations and "other disparaging remarks" about the defendants, incorrectly stating that Rutske is in violation of her State Director agreement with defendants, and threatening legal action against Rutske. A true and correct copy of the email that I received from Rutske, with the attached letter from Laura Myers, Esq., is attached hereto as Exhibit J.

56.     Ms. Myers' letter incorrectly states that: Rutske has misrepresented actions taken by defendants; and that Rutske entered into a State Director Contract with defendants. As with the other State Directors, Rutske had entered into a State Director Contract with Mrs. USNP to allow Rutske to sub-license some of Mrs. USNP's trademarks. Rutske did not enter into a State Director Contract with Williams or Crown Garland, LLC ("Crown Garland").

57.     Ms. Myers' letter constitutes another instance of Williams and Crown Garland continuing to interfere with Mrs. USNP's State Directors (its sub-licensees) in violation of the State Director Contracts.

### Conversion of Mrs. USNP's Social Media and Websites

58.     Under the 2016 and 2017 Licensing Agreements, Williams was required to promote the Mrs. United States brand. Facebook pages and other social media platforms, including but not limited to Snapchat, Instagram, Twitter, and YouTube, were developed and

grown on the national, state, and local levels to promote the Mrs. USNP brand and to recruit future contestants.

### Facebook Pages Administered by State Directors

59.     As detailed in the accompanying Declarations of Molly Lewellen, Katy Moody Cusick, and Shena Dixon Mason (collectively the "State Director Declarations"), while Williams was still under contract with Mrs. USNP, she asked many State Directors to make her an administrator of Facebook pages that they used to recruit contestants on the state and local level and to promote the Mrs. USNP brand. After gaining access, Williams then blocked certain State Directors from these accounts and has converted many of these Facebook pages to promote Cosmos International Pageants instead. This activity has stolen access to potential customers and future contestants from the Mrs. USNP brand. The Mrs. USNP brand was used by State Directors to gain the followers of these social media accounts.

60.     As detailed more fully in the State Director Declarations, the Facebook pages were used as a significant marketing tool directed towards prospective pageant contestants. The conversion of the Mrs. USNP Facebook pages that were devoted to reaching contestants, potential contestants, and their families in Tennessee, Kentucky, and Virginia is further detailed in these Declarations.

61.     Additional examples of Williams and Crown Garland's continued conversion of Mrs. USNP Facebook pages to Cosmos pages, and the continued use of Mrs. USNP trademarks on these pages following termination of the Licensing Agreements, are attached to Demanchick's Decl. at Exhibit FF.

62.     By doing this, Williams and Crown Garland also converted Mrs. USNP's Facebook followers to Cosmos' followers, thereby stealing Mrs. USNP's contact list and

promotional abilities.

63.     Some Mrs. USNP Facebook pages were taken down entirely by Williams. (See Lewellen Decl. ¶¶ 13-14, Ex. Z.)

64.     I have also viewed a video posted to a converted Tennessee Facebook page (now called "Tennessee Cosmos Pageants") where former Mrs. USNP State Director Summer Blalock conducts a "Question and Answer" Facebook Live presentation with, upon information and belief, a Mrs. USNP teen titleholder. Blalock refers to the Mrs. USNP titleholder as "our Tennessee Teen Cosmos." (See Lewellen Decl., Ex. AA.)

65.     Williams also removed the links on Mrs. USNP Facebook sites that formerly allowed prospective customers to register as paying contestants in Mrs. USNP pageants. These links were replaced with links to Cosmos' website, where the prospective contestants are able to register to pay and compete in Cosmos' pageants. (Cusick Decl. ¶¶ 7, 14-15, Ex. U; Demanchick Decl., Ex. CC, FF.)

66.     Williams and Crown Garland have also converted other Mrs. USNP social media accounts on Instagram and Twitter into Cosmos-branded pages, deceptively leaving Mrs. USNPs' postings and photographs in the timeline. This makes it appear as though Cosmos is now running Mrs. USNPs' pageants or is somehow affiliated with Mrs. USNP. (Demanchick Decl., Ex. EE.)

## Website Conversion by Williams and Crown Garland

67.     As the National Director under the 2016 and 2017 Licensing Agreements, Williams acted as the administrator of several of Mrs. USNP's websites.

68.     Under the Licensing Agreements, Williams was required to return the control of all websites to Mrs. USNP upon the termination or expiration of the agreements. (Ex. D,

2016 Licensing Agreement, § II (k); Ex. E, 2017 Licensing Agreement, § II (c), (k) and III (e).)

69.     On November 6, 2017, Williams confirmed via email that she would return all websites created by or on behalf of Mrs. USNP in her control or possession within the two weeks leading up to the 2018 National Pageant. A true and accurate copy of this email is attached as **Exhibit J**.

70.     At the time that the Licensing Agreements were terminated, Williams and Crown Garland failed to return or provide administrative rights to the following web sites:

> www.missunitedstatespageants.com
> www.littlemissunitedstatespageant.com
> www.missjrteenunitedstatespageant.com
> www.misspreteenunitedstatespageant.com
> www.missteenunitedstatespageant.com
> www.missunitedstatespageant.com
> www.mswomanunitedstatespageant.com
> www.unitedstatesnationalpageants.com
> www.unitedstatespageants.com
> www.unitedstatespageant.com

(Referred to herein as the "Mrs. USNP Websites".)

71.     Prior to the 2018 National Pageant, the websites www.unitedstatespageants.com and www.unitedstatespageant.com contained information concerning Mrs. USNP's pageants and allowed contestants to sign up to participate in Mrs. USNP's pageant system.

72.     Just before or during the 2018 National Pageant, Williams and Crown Garland removed all content from the websites www.unitedstatespageants.com and www.unitedstatespageant.com referencing Mrs. USNP or its trademarks, and removed all pages allowing contestants and potential contestants to sign up to participate with Mrs. USNP.

17

73.     As of August 6, 2018, the Mrs. USNP Websites were either taken down or displayed a "Farewell from Crown Garland LLC" message.  (Demanchick Decl., Ex. BB.)

74.     The time-period during and immediately following Mrs. USNP's National Pageant is historically a time when a significant number of new contestants sign up for the next year's pageants.

75.     The fact that contestants were not able to access these pages to sign up as future contestants has a serious negative impact on Mrs. USNP's ability to sign future contestants.

76.     After the commencement of this lawsuit, Williams and Crown Garland allowed some of the website domain names to expire, which were purchased by Plaintiff.

77.     Presently, Williams and Crown Garland continue to hold and are refusing to turn over the rights to the following three domain names: www.missunitedstatespageants.com, www.missunitedstatespageant.com, and www.unitedstatesnationalpageants.com.

### Failure to Return Other Materials

78.     In March 2018, Mrs. USNP set up an online internet-based portal using document management software to allow Williams and Crown Garland to return all materials, intellectual property, and administrative rights as required under the 2016 and 2017 Licensing Agreements. The portal identified different categories to upload information and documents.  A true and accurate screenshot of each of these categories is attached hereto as **Exhibit K**.

79.     Despite the requests of Mrs. USNP, Williams and Crown Garland have failed to return the following materials and information:

A. Williams and Crown Garland have failed to return all materials, including

without limitation documents (whether electronic or in hard copy), files, forms, and databases, which were generated during the term of the subject Licensing Agreements and/or generated utilizing Mrs. USNP's Trademarks, including without limitation financial records, logos, promotional items, marketing materials, video recordings, and contracts entered during the term of the agreements, including contracts with sponsors, suppliers and hotels, and administrative rights to Plaintiff's websites and social media accounts. (Ex. D, 2016 Licensing Agreement, §§ II(c), (k); Ex. E, 2017 Licensing Agreement, §§ II(c), (e), (k));

B. Prior to the commencement of this action, Williams and Crown Garland failed to return any contracts with State Directors or titleholders; in September 2021 some of these contracts were produced; however, Williams and Crown Garland now claim they are no longer in possession of all such contracts;

C. Williams and Crown Garland have failed to return the contestant rolls, constituting each pageant participant's name, address, phone number, email, date of birth, and the state they represented for the 2018 Mrs., Miss, Ms., Ms. Woman, Miss Teen, Miss Jr. Teen, Miss Pre-Teen, and Little Miss United States National Pageants (and, for minor-contestants, the parent or guardian's name, address, phone number, and email address); (Ex. D, 2016 Licensing Agreement §§ II(a), (c), (j), (k); Ex. E, 2017 Licensing Agreement § II(j));

D. Failed to provide Mrs. USNP with the Contestant Lists following the termination of the agreements (Ex. D, 2016 Licensing Agreement §§ II(a), (c), (j), (k)); and Ex. E, 2017 Licensing Agreement § II(j)); and

E.   Failed to provide prospective contestant rolls identifying persons who indicated they were interested in participating in Plaintiff's pageants.

80.    On July 7, 2018, I directed William Mellon to send correspondence to Mrs. USNP's State Directors who had not yet re-signed with Mrs. USNP for the 2018-2019 pageant season requesting, among other items: titleholder rolls; contestant rolls; assignment of all websites and social media associated with Mrs. USNP; sponsor information; and the return of other documents or materials provided by Mrs. USNP and/or Crown Garland.  (*See* Ex. H.)

81.    The following state directors included as recipients in the email above failed to return any of the requested information or materials:  Teri Brown-Walker (Maryland, District of Columbia, Delaware), Tina Chisholm (Florida), Kim and Augi Tulba (Hawaii), Jillian Spano (New York and New Jersey), Sharron McInnes and Renee Austin (North Carolina and South Carolina), Summer Blalock (Tennessee and West Virginia), and Melissa Sullivan (Texas) (the "Defaulting Directors").

82.    As a result, in September 2018, I directed my legal counsel to send letters to the Defaulting Directors again demanding the return of the foregoing information and materials, and advising of their breach of their State Director Agreements with Mrs. USNP.  (*See* Attorney Decl. Ex. A.)

83.    When the Defaulting Directors still had not provided the requested information, in July 2019 I directed my legal counsel to send additional letters to the Defaulting Directors again demanding the return of the information and materials, and advising of Mrs. USNP's intent to file a lawsuit in federal court in Virginia (per the terms of the State Director agreements) if the materials were not returned.  (*See* Attorney Decl. Ex. B.)

84.     To date the Defaulting Directors still have not returned any of the information or materials referenced in Exhibits A and B.

85.     I have decided to have Mrs. USNP delay filing the referenced lawsuit against the Defaulting Directors until the Court in this action renders a decision in Mrs. USNP's favor so as not to litigate the issue of interpretation of the subject licensing agreements and State Director agreements in multiple courts.

86.     The above letters were sent to protect Mrs. USNP's economic interest in enforcing its contracts and its rights under its Trademarks.

### Failure to Pay Licensing Fees

87.     Under the 2016 Licensing Agreement, Crown Garland and Williams were required to pay Plaintiff a licensing fee of $300.00 per contestant within thirty days following the 2018 National Pageant.  (Ex. D, ¶ II(i).)

88.     Crown Garland and Williams issued a Program Book during the 2018 National Pageant, which lists 210 contestants in the divisions covered by the 2006 Licensing Agreement.

89.     Based on the foregoing, Crown Garland and Williams were required to pay $63,000.00 to Mrs. USNP in licensing fees on or before August 6, 2018.

90.     To date Crown Garland and Williams have failed to remit any payment to Mrs. USNP for licensing fees under the 2016 Licensing Agreement in connection with the 2018 National Pageant.

91.     Mrs. USNP has also sustained additional damages as a result of Williams and Crown Garlands' actions as explained in the Declaration of William Mellon.

**No Oral Agreements**

92.    Contrary to Williams and Crown Garland's assertion, I never entered into any agreement on behalf of Mrs. USNP with Williams or Crown Garland to reimburse them for any alleged registration fees, including any such fees allegedly paid to a third party.

93.    Moreover, Defendants claim that this alleged representation occurred in or around 2015, prior to the execution of the 2016 Licensing Agreement.  The 2016 Licensing Agreement states that it "contains the entire understanding of the Parties and supersedes all prior agreements and understandings, whether written or oral with regard to the subject matter hereof."  (Ex. D, ¶ III(e).)

**Advertising and Logos**

94.    At all times, as a licensee of Plaintiffs, Williams and Crown Garland were not entitled to reimbursement of amounts they allegedly expended in advertising costs or to develop logos utilizing Mrs. USNP's Trademarks.

95.    Under the 2016 and 2017 Licensing Agreements, Williams and Crown Garland were required to "promote, finance and produce" the pageant competitions.  (Ex. D, ¶ II(a).)

96.    This means that Williams and Crown Garland were required to expend money in order to promote and produce the pageants.

97.    Williams' current claims seeking reimbursement for those costs are directly contrary to the language and intent of the parties' agreements.

**Conclusion**

98.    Following the termination of Defendants' contracts with Mrs. USNP, Williams and Crown Garland, in concert with Cosmos, violated the Licensing Agreements and misappropriated Mrs. USNP's trade secrets, causing substantial damage to Mrs. USNP, and

Mrs. USNP is entitled to judgment on those claims.  In response to this lawsuit, Williams and Crown Garland have asserted alleged claims that are entirely baseless and should be dismissed.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on December 9, 2021.

                                                  s/ Anthony Ilacqua
                                             ANTHONY ILACQUA