UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MRS. UNITED STATES NATIONAL PAGEANT,
INC.,

                                        Plaintiff,                   Case No. 6:18-CV-06587

        v.

STEPHANIE L. WILLIAMS, CROWN GARLAND
LLC, and COSMOS INTERNATIONAL
PAGEANTS, INC.,

                                        Defendants.

STEPHANIE L. WILLIAMS, CROWN GARLAND
LLC, and COSMOS INTERNATIONAL
PAGEANTS, INC.,

                                Third-Party Plaintiffs,

        v.

ANTHONY ILACQUA,

                                Third-Party Defendant.

## PLAINTIFF'S LOCAL RULE 56(A)(1) STATEMENT OF UNDISPUTED MATERIAL FACTS

        Plaintiff, Mrs. United States National Pageant, and Third-Party Defendant Anthony

Ilacqua, respectfully submit this statement of undisputed material facts in support of their

motion for partial summary judgment, pursuant to Local Rule 56(a)(1).

### Plaintiff's Trademarks and Pageants

        1.      For the past 35 years, Plaintiff has been in the business of planning, organizing

and conducting beauty pageants throughout the United States.  (Ilacqua Decl. ¶ 5. )

        2.      Mrs. USNP owns, and its various pageants are known and operated under, the

following U.S. Federally Registered Trademarks:

(1)  MRS. UNITED STATES NATIONAL PAGEANT® - U.S. TM Reg. No. 1851722
(2)  MRS. UNITED STATES® - U.S. TM Reg. No. 2083350
(3)  LITTLE MISS UNITED STATES® - U.S. TM Reg. No. 4027072
(4)  MISS PRE-TEEN UNITED STATES® - U.S. TM Reg. No. 4469152
(5)  MISS JUNIOR TEEN UNITED STATES® - U.S. TM Reg. No. 3234362
(6)  MISS TEEN UNITED STATES® - U.S. TM Reg. No. 3234363
(7)  MISS UNITED STATES® - U.S. TM Reg. No. 3428292
(8)  MS. UNITED STATES® - U.S. TM Reg. No. 2157123
(9)  MS. WOMAN UNITED STATES® - U.S. TM Reg. No. 4669675

(Collectively referred to herein as "Plaintiff's Trademarks.")  (Ilacqua Decl. ¶ 4 and Plaintiff's Appendix ("Pl. App.") Ex. C.)

3.      Plaintiff's Trademarks were registered between August 1994 and September 2011, and have been in continuous use from the time of registration through the present. (Ilacqua Decl. ¶¶ 4-5.)

4.      Throughout that time, Plaintiff has produced pageants at local and state levels in each of the trademarked categories, leading to an annual national pageant during which the state titleholders compete for national titleholder status.  (Ilacqua Decl. ¶¶ 4-9.)

5.      Mrs. USNP has owned and operated websites to advertise its pageants under the following domain names:

www.mrsunitedstates.com
www.missunitedstates.com
www.msunitedstates.com
www.missteenunitedstates.com
www.missjuniorteenunitedstates.com
www.littlemissunitedstates.org
www.missunitedstatespageants.com
www.littlemissunitedstatespageant.com
www.missjrteenunitedstatespageant.com
www.misspreteenunitedstatespageant.com
www.missteenunitedstatespageant.com
www.missunitedstatespageant.com
www.mswomanunitedstatespageant.com
www.unitedstatesnationalpageants.com
www.unitedstatespageants.com

www.unitedstatespageant.com

(Ilacqua Decl. ¶ 10.)

6.      Mrs. USNP's Trademarks, social media accounts and websites were created at great expense to Mrs. USNP over many years, and Mrs. USNP owns the exclusive rights to their recognition and goodwill.  (Ilacqua Decl. ¶ 11.)

## Licensing Agreements

7.      Mrs. USNP, as licensor, and Williams and Crown Garland, as licensee, entered into a Pageant Licensing Agreement, dated November 16, 2016 ("2016 Licensing Agreement"), granting Williams and Crown Garland a limited license to operate the National Pageant for the trademarked pageant categories numbered (3) through (9) above. (Ilacqua Decl. ¶ 13; Williams Depo. p. 97, l. 4-13; Pl. App. Ex. D.)

8.      Subsequently, Mrs. USNP, as licensor, and Williams and Crown Garland, as licensee, entered into a second Pageant Licensing Agreement, dated November 7, 2017 ("2017 Licensing Agreement"), granting Williams and Crown Garland a limited license to use the Mrs. United States Trademark numbered (2) above. (Ilacqua Decl. ¶ 14; Williams Depo. p. 110, l. 20 – p. 110, l. 20; Pl. App. Exhibit E.)

9.      Williams executed both the 2016 Licensing Agreement and 2017 Licensing Agreement individually and on behalf of her company Crown Garland LLC.  (Williams Depo. p. 97, l. 14 – 21; p. 109, l. 20 – p. 110, l. 13; Pl. App. Ex. D [2016 Licensing Agreement] and E [2017 Licensing Agreement].)

10.      Under both the 2016 Licensing Agreement and 2017 Licensing Agreement, Williams and Crown Garland LLC agreed to abide by Pageant Operating Standards which are incorporated into both licensing agreements by reference. (Williams Depo. p. 137, l. 21 –

p. 138, l. 3; Pl. App. Ex. D § II(e); Ex. E § II(a).)

11.     The Pageant Operating Standards in effect at the time of the 2018 National Pageant are attached to Plaintiff's Appendix as Exhibit HH.  (Ilacqua Decl. ¶ 17.)

12.     Under the 2016 and 2017 Licensing Agreements, Williams and Crown Garland were required to "[p]romote, finance, and produce fair and unbiased annual pageant competitions at the state and national levels" for each of the pageant categories.  (Pl. App. Ex. D § II(a); Ex. E § II(a).)

13.     The 2016 and 2017 Licensing Agreements provide that, for the state-level competitions, the Licensee was required to "separately contract with a single individual at each state level, each of whom will be given the title 'State Director'," who would be "responsible for conducting their respective state pageants under the applicable Licensed Trademark . . ."  (referred to herein as the "State Director Agreements".) (Pl. App. Ex. D § II(b); Ex. E § II(b).)

14.     The Licensee was required to use a form contract provided by Mrs. USNP to procure the State Director Agreements.  *Id.*

15.     The Licensee "shall be solely responsible for retaining, managing and communicating with the State Directors."  (Pl. App. Ex. E, § II(b); Ex. D § II(b).)

16.     The Licensee was responsible for producing the annual national-level competition amongst the various state title-holders. (Pl. App. Ex. D §§ II(a) and (b); Pl. App. Ex. E, §§ II(a) and (b).)

17.     As consideration for the Licensee's work in procuring the state director contracts for Plaintiff and producing Plaintiff's annual national pageant, the Licensing Agreements state that the Licensee will receive all application and entry fees paid by the

pageant contestants.  (Pl. App. Ex. D § II(g); Pl. App. Ex. E § II(g).  The Licensee was then required to pay Plaintiff an annual National Director License fee, plus a fee per contestant in Plaintiff's national pageant.  (Pl. App. Ex. D § II(h); Ex. E § II(h) and (i).)

18.     The Licensing Agreements further state that the Licensee may not assign the agreement without the prior written consent of Plaintiff; and that the Agreements shall be construed according to New York law.  (Pl. App. Ex. D § III(a) and (c); Pl. App. Ex. E § III(a) and (c).)

### Plaintiff's Ownership of its Trademarks and Property

19.     The 2016 Licensing Agreement and 2017 Licensing Agreement state that the "Licensee acknowledges the validity and exclusive ownership of the Licensed Trademarks by [Plaintiff]," and "all permitted uses [of the Licensed Trademarks] shall insure to the benefit of [Mrs. USNP]."  (Pl. App. Ex. D § II(c); Ex. E § II(c).)

20.     The 2016 Licensing Agreement and 2017 Licensing Agreement state that all permitted uses of Plaintiff's Trademarks by the Licensee and the State Directors "shall inure to the benefit of [Plaintiff]."  (Pl. App. Ex. D § II(c); Ex. E § II(c).)

21.     The 2016 Licensing Agreement and 2017 Licensing Agreement both state that "[u]pon expiration or termination of this Agreement, any and all rights granted hereunder to Licensee under the Licensed Trademarks and related names, logos, etc. shall immediately expire and terminate."  (Pl. App. Ex. D § II(k); Ex. E § II(k).)

22.     The 2017 Licensing Agreement further clarified Crown Garland and Williams' obligations as Licensee to return information and materials to Mrs. USNP as licensor following the termination of the Licensing Agreements, stating:

> Licensee acknowledges the validity and exclusive ownership of
> the Licensed Trademarks by Mrs. United States National

Pageant, Inc . . . Licensee and its State Directors shall inure to the benefit of Licensor.  Further, **licensee agrees to immediately turn over all files, forms, databases and any and all materials relating to said pageant except anything written exclusively for Crown Garland or containing non-disclosure language that would be violation of terms, upon resignation, retirement or termination understanding that said materials are the sole property of licensor and may not be distributed or duplicated for any use outside those currently granted in this agreement**.

(Pl. App. Ex. E § II(c).)

23.     As to intellectual property, the 2017 Licensing Agreement also clarifies that:

Licensee agrees to draft a list of intellectual property belonging to licensor that licensee uses within 30 days of signing this contract.  Licensor acknowledges licensees right to use these items during the term of the agreement but asserts exclusive ownership over each and every one. Upon licensors acceptance of the list licensee provides and any additions licensor discovers in use bearing trademarks or trade names owned by licensor, **licensee will transfer the ownership to licensor in a reasonable timeframe at licensors expense and add licensor on as a registered administrator in addition to licensee.  This includes but is not limited to any and all websites and social media relating to the brand or trademarks.**  It is mutually understood that any intellectual property that has the ability to receive or pay funds or where banking information is connected or intertwined will not be included until such connection can be removed or turned off which shall occur no later than two weeks prior to the July 2018 pageant. It is further understood that licensor will not move any hosting services until such service contract expires or upon licensee termination at licensors expense.

(Emphasis added.) (Pl. App. Ex. E §  ¶ III(e), pp. 3-4.)

## State Director Agreements

24.     Williams and Crown Garland produced Mrs. USNP's thirty-second annual MRS. UNITED STATES NATIONAL PAGEANT® from July 3, 2018 to July 7, 2018 in Championsgate, Florida ("2018 National Pageant"). (Ilacqua Decl. ¶¶ 9, 31; Williams Depo. p. 174, l. 25 – p. 175, l. 3.)

25.     For the year leading up to the 2018 National Pageant, Williams and Crown Garland procured State Director Agreements with each State Director (referred to herein as the "2018 State Director Agreements").  (Ilacqua Decl. ¶¶ 20, 21; Williams Depo. p. 37, l. 15-19; p. 38, l. 5-7).

26.     The form State Director Agreements utilized by Williams and Crown Garland were initially drafted and provided by Mrs. USNP to Williams and Crown Garland. (Williams Depo. p. 166, l. 18 – p. 167, l. 13). Williams and Crown Garland revised these form State Director Agreements without getting approval from Mrs. USNP in violation of the Licensing Agreements. (Williams Depo. p. 47, l. 16 – p. 48, l. 20; p. 168, l. 2-4).

27.     Sample 2018 State Director Agreements procured by Williams and Crown Garland under the Licensing Agreements are attached to Plaintiff's Appendix as Exhibits T and X.  (Williams Depo p. 47, l. 7 to l. 15.)

28.     The 2018 State Director Agreements procured by Williams and Crown Garland prominently display Plaintiff's logo and Trademarks on the cover, and state that they are entered and executed by "MRS UNITED STATES NATIONAL PAGEANT, INC. by Crown Garland, LLC" as Licensor, and the State Director as Licensee.  (Cusick Decl. Ex. T; Mason Decl. Ex. X; Williams Depo. p. 47, l. 22 – p. 48, l. 2)

29.     The 2018 State Director Agreements procured by Williams and Crown Garland contain the following covenants not to compete:

14.1   Covenants Not to Compete

You agree that during the Term of this Agreement, you will not directly or indirectly engage in any other business which conducts a competitive pageant or competition. You must, however, give us notice of your intention to engage in any noncompetitive pageant or competition business.

You and your immediate family members are prohibited from engaging in any competitive business as a proprietor, partner, investor, shareholder, director, officer, employee, principal, agent, judge, adviser, or consultant. In addition, during the Term of this Agreement, you agree not to divert any contestants, sponsors or titleholder to any competitive pageant or competition and not to divert any other business that should be handled by your State Pageant to any other entity. It is the intention of these provisions to preclude not only direct competition but also all forms of indirect competition, such as consultation for competitive businesses, service as an independent contractor for competitive businesses, or any assistance or transmission of information of any kind which would be of any material assistance to a competitor. It is the intention of these provisions that any person or entity with any legal or beneficial interest in or traceable to, down or through you be bound by the provisions of this covenant.

Further, during the Term of this Agreement, and for two years after the termination or expiration of this Agreement for any reason, you agree not to hire personnel of ours, our Affiliates or of any other Mrs. United States National Pageant licensee.

(Pl. App. Ex. T, p. 21, § 14.1.)

30. Section 19 of the State Director Agreement is titled Further Obligations and Rights of the Parties on Termination or Expiration, and states that upon termination of the agreement, the state director was required to discontinue the use of Plaintiff's Trademarks, to return all materials and information listed in paragraph 19(6); to cease using telephone numbers associated with Plaintiff's Trademarks and to transfer the telephone number if requested; and to assign or transfer domain names and websites upon request. (Pl. App. Ex. T, State Director Agreement ¶ 19.1(1), 19.1(6), 19.1(8), 19.1(9).)

**Titleholder Agreements**

31.     The 2018 State Director Agreements further provide that the State Directors will require each state titleholder (or their parent/guardian if a minor) to execute a contract stating the titleholder's duties during their annual reign as the titleholder, also known as a delegate agreement (the "Titleholder Agreements").  (See Pl. App. Ex. T and X at §§ 6.2, 8.3.)

32.     A sample of the Titleholder Agreements procured by Williams and Crown Garland for the 2018 National Pageant is attached to Plainitff's Appendix as Exhibit M. (Williams Depo. p. 108, l. 12 to l. 22.)

33.     The Titleholder Agreements utilized for the 2018 National Pageant contain non-compete provisions prohibiting the Mrs. and Miss state titleholders from entering any competing pageants during the year of their reign, and require those titleholders to participate in promotional activities for Plaintiff.  (Pl. App. Ex. M, p. 1.)

34.     The Titleholder Agreement: (A) uses Mrs. USNP's Trademarks and logos; (B) prohibits titleholders in the Miss or Mrs. Divisions from competing in other pageants until the conclusion of their reigns; (C) requires these titleholders to "embrace and proudly promote the title" until it is passed on to a successor; and (D) requires titleholders to make a minimum of one charitable appearance per month. (Pl. App. Ex. M, p 1.)

**Termination of the 2016 and 2017 Licensing Agreements**

35.     The 2017 Licensing Agreement expired by its terms on the day following the 2018 National Pageant, July 8, 2018. (Pl. App. Ex. E, § I(a); Williams Depo. p. 185, l. 15- p. 186, l. 9.)

36.     On May 24, 2018, Williams, individually and as the owner of Crown Garland, issued a letter to Mrs. USNP stating: she was also terminating the 2016 Licensing Agreement

on July 8, 2018 (the day after the 2018 National Pageant); all rights held by Williams or Crown Garland to Mrs. USNP's intellectual property would terminate as of July 8, 2018; that Williams would deliver all intellectual property and other materials as contractually required to Mrs. USNP on or before that date; and that all amounts payable under the 2016 and 2017 Licensing Agreements would be paid in full on or before the termination date.  (Pl. App. Ex. F; Williams Depo. p. 170, l. 21).

37.     In March 2018, Plaintiff created and provided Williams with access to an online, internet based document management portal containing categories listing the materials and information Williams and Crown Garland were asked to provide, and the actions these defendants were required to take, leading up to and following the end of the Licensing Agreements.  (Ilacqua Decl. ¶ 73 and Pl. App. Ex. K.)

## Williams' Association with Competing Pageants

38.     Williams   purchased   defendant   Cosmos   International   Pageants,   Inc. ("Cosmos") in February 2018 and is the sole shareholder and CEO of Cosmos, which lists Williams and Crown Garland's address (a residential property) as its principal office. (Williams Depo. p. 17, l. 9 – p. 18, l. 9; p. 19, l. 7-9).

39.     Marketing materials indicate that, as of November 20, 2017, Williams was named as the National Director of the Miss Arnold Teen Fitness Pageant. Williams admits she began to produce the Miss Arnold Fitness Pageant in 2017. (Demanchick Decl. ¶ 11 and Ex. DD; Williams Depo. p. 15, l. 15-22).

40.     Both Cosmos and Miss Arnold Teen Fitness Pageant compete directly with Mrs. USNP pageants. (Ilacqua Decl. ¶ 34).

**2018 National Pageant**

41.     Under the 2017 Licensing Agreement, Williams and Crown Garland were required to provide Mrs. USNP representatives hotel accommodations to attend the 2018 National Pageant. (Pl. App. Ex. E § III (f).)

42.     On June 28, 2018, days before the 2018 Mrs. United States National Pageant, counsel for Crown Garland and Williams sent Ilacqua a "cease and desist" letter stating that he was not allowed to attend the National Pageant and threatening that if he attended, he would be asked to leave by hotel security and would be committing the crime of trespass under Florida law. (Pl. App. Ex. G; Williams Depo. p. 172, l. 6 – 20). The only reason cited in the letter for the demand was "the state of the current relationship between [Ilacqua] and Ms. Williams . . ." (Pl. App. Ex. G.)

43.     During the 2018 National Pageant, Williams spoke to the State Directors, Titleholders, and their families about Cosmos, and advertised both Cosmos and Miss Arnold Teen Fitness pageants. (See Decs. of Simmons ¶¶ 20-22, Cusick ¶¶ 20-21, and Mason ¶ 10.)

44.     Williams distributed an advertising program at the National Pageant that featured a letter disparaging Mrs. USNP. (Williams Depo. p. 176, l. 10 – p. 180, l. 11; Pl. App. Ex. R).

45.     Williams also distributed *Pageantry* magazine promoting the Miss Arnold Teen Fitness Pageant. Titleholders and their families saw the materials distributed by Williams and Crown Garland at the National Pageant and could choose to enter those pageant systems in the future instead of Mrs. USNP pageants. (See Simmons Decl. ¶¶ 21-22; Exs. R and S; Williams Depo. p. 176, l. 10 – p. 180, l. 11; p. 259, l. 9 to l. 14; Pl. App. Exhibits R and S).

46.     Without Mrs. USNP's consent or knowledge, Williams failed to use the

supplier for purchasing crowns approved by Mrs. USNP, and instead used a supplier and used non approved crowns for the National Queens; and Williams instructed the sash supplier not to use the identical sash previously approved by Mrs. USNP, thereby providing the winning contestants with crowns and sashes that did not contain designs and logos approved by Mrs. USNP. These decisions hurt the Mrs. USNP brand and required Mrs. USNP to repurchase all of the crowns and sashes. (Ilacqua Decl. ¶ 40.)

47.     During the 2018 National Pageant, Titleholders advised Ilacqua that Williams and Crown Garland were not treating all contestants fairly and equally.  (Decl. of Emily Simmons ¶ 26; Ilacqua Decl. ¶ 42.)

### Failure to Pay Licensing Fees

48.     Under the 2016 Licensing Agreement, Crown Garland and Williams were required to pay Plaintiff a licensing fee of $300.00 per contestant within thirty days following the 2018 National Pageant.  (Williams Depo. p. 118, l. 13 to l. 23; Pl. App. Ex. D § II(i).)

49.     Crown Garland and Williams issued a Program Book during the 2018 National Pageant, which lists 210 contestants who participated in the divisions covered by the 2006 Licensing Agreement, referred to as the "lesser divisions." (Williams Depo. p. 123, l. 4 to p. 124, l. 18; Melon Decl. ¶ 5; *and see* Program Book at Plaintiff's Appendix Ex. II.)

50.     Based on the foregoing, Crown Garland and Williams were required to pay $63,000.00 to Mrs. USNP in licensing fees on or before August 6, 2018. (Ilacqua Decl. ¶ 89)

51.     To date Crown Garland and Williams have failed to remit any payment to Mrs. USNP for licensing fees under the 2016 Licensing Agreement in connection with the 2018 National Pageant. (Ilacqua Decl. ¶ 90; Williams Depo. p. 119, l. 20 to 24; Defendant Responses and Objections to Request to Admit, Response to Request to Admit # 4, at Pl.

App. Ex. JJ).

### **Williams and Crown Garland's Inducement of State Directors and Titleholders**

52.     Williams sent an email to the State Directors on July 4, 2018, stating that following the 2018 National Pageant, the State Directors were prohibited from competing with her company, Crown Garland LLC; that they may not continue to be associated with Mrs. USNP; and threatening retaliation comprised of legal action against these State Directors and the payment of Williams' and Crown Garland's attorneys' fees.  (Pl. App. Exhibit V; Williams Depo., p. 180, l. 12 – p. 184, l. 19).

53.     The statements were in direct contravention of the State Director Agreements that prohibit competition with Mrs. USNP, not Crown Garland. (See Pl. App. Ex. T and X at §§ 14.1 and p 33.)

54.     Williams' July 4, 2018 email also instructs the State Directors to not turn anything over to Mr. Ilacqua or Mrs. USNP. (Cusick Decl. ¶ 20, Ex. V; Williams Depo., p. 182, l. 12 – p. 184, l. 4).

55.     This is in direct contravention of the State Director Agreements that require State Directors to return all confidential information and materials to Mrs. USNP, including social media page administration and website domains. (Pl. App. Ex. T and X at § 13.1.)

56.     The July 4, 2018 email also states that it was signed by Williams individually as Mrs. USNP's National Director, as the Owner of Crown Garland, and as the "Official License Holders and Producers of the Miss United States Pageant & Miss Arnold Teen Fitness Pageant." (Pl. App. Ex. V.)

57.     On July 7, 2018, Mrs. USNP sent an email to the 2018 State Directors who had not yet re-signed with Plaintiff for the 2018-2019 pageant season, requesting the return of

Plaintiff's information and material including, among other items: titleholder rolls; contestant rolls; assignment of all websites and social media associated with Mrs. USNP; sponsor information; and the return of other documents or materials provided by Mrs. USNP and/or Crown Garland. (Mellon Decl. ¶ 2; Williams Depo. p. 184, l. 20 to p. 185, l. 7; Pl. App. Ex. H.)

58.     In response, Williams sent a second email to the State Directors on July 8, 2018 (the effective date of Williams' and Crown Garland's resignation) that states: "you are contractually bound only to Crown Garland and you have no direct contractual relationship with Mr. Ilacqua or the Mrs. United States National Pageant, Inc." This email further threatens legal action against the State Directors for cooperating with Mrs. USNP. (Williams Depo. p. 185, l. 8 – l. 14, p. 188, l. 5 – p. 189, l. 18; Pl. App. Ex. W.).

59.     The following nine people, who were State Directors for Mrs. USNP in connection with the 2018 National Pageant, were included among the recipients of the July 4, 2018 and July 8, 2018 emails From Williams referenced above:  Teri Brown-Walker (Maryland, District of Columbia, Delaware), Tina Chisholm, Kim Tulba, Augi Tulba, Jillian Spano, Sharron McInnes, Renee Austin, Summer Blalock, and Melissa Sullivan (referred to herein collectively as the "Defaulting Directors").  *Id.*

60.     The Defaulting Directors were state directors for Mrs. USNP in connection with the 2018 National Pageant year for the following twelve states:  Teri Brown-Walker (Maryland, District of Columbia, Delaware), Tina Chisholm (Florida), Kim and Augi Tulba (Hawaii), Jillian Spano (New York and New Jersey), Sharron McInnes and Renee Austin (North Carolina and South Carolina), Summer Blalock (Tennessee and West Virginia), and Melissa Sullivan (Texas).  Ilacqua Decl. ¶ 50.

61.     Following Williams July 4, 2018 and July 8, 2018 emails referenced above, the Defaulting Directors  became State Directors with Cosmos. (See Crown Garland's Amended Answer With Counterclaims, ¶ 137 [Dkt 45]; Ilacqua Decl. ¶¶ 50-51).

62.     The Defaulting Directors have refused to return Mrs. USNP's tangible property and intellectual property to Mrs. USNP, including without limitation Facebook pages, contestant lists, and information regarding prospective contestants in direct violation of their State Director Agreements.  Ilacqua Decl. ¶¶ 50-52).

63.     As a result, in September 2018, Mrs. USNP directed its legal counsel to send letters to the Defaulting Directors again demanding the return of the foregoing information and materials, and advising of their breach of their State Director Agreements with Mrs. USNP.  (Ilacqua Decl. ¶ 82; Attorney Decl. Ex. A and B.)

64.     When the Defaulting Directors still had not provided the requested information, in July 2019 Mrs. USNP directed its legal counsel to send additional letters to the Defaulting Directors again demanding the return of the information and materials, and advising of Mrs. USNP's intent to file a lawsuit in federal court in Virginia (per the terms of the State Director agreements) if the materials were not returned. (Ilacqua Decl. ¶ 83, Attorney Decl. Ex. B.)

65.     To date, the Defaulting Directors have not returned any of the information or materials requested in Mrs. USNP's September and July 2019 letters referenced above. (Ilacqua Decl. ¶ 84.)

**Conversion of Mrs. USNP's Social Media**

66.     Under the 2016 and 2017 Licensing Agreements, Williams and Crown Garland were required to promote the Mrs. United States brand. (Pl. App. Ex. D § II(a); Ex.

E § II(a).)

67.     Williams and Crown Garland developed Facebook pages and other social media platforms under the 2016 and 2017 Licensing Agreements to promote the Mrs. USNP brand and to recruit future contestants.  (Williams Depo., p. 211, l. 22 – p. 214, l. 14, p. 227, l. 11 – p. 228, l. 7; p. 236, l. 5 – p. 236, l. 18.)

68.     Plaintiff's State Directors have utilized Facebook sites using Plaintiff's Trademarks and tradenames for the various state pageants and divisions, which are critical to the recruitment of future pageant contestants.  (Mason Decl. ¶ 5; Cusick Decl. ¶¶ 5-8; Ilacqua Decl. ¶¶ 55-57.)

69.     Prior to the 2018 National Pageant, Williams requested that Plaintiff's State Directors grant Williams shared administrator status on their Facebook sites.   (Mason Decl. ¶ 6; Cusick Decl. ¶ 5.; Williams Depo. p. 213, l. 9 – p. 214, l. 14).

70.     On or about July 1, 2018, Williams then went into the State Directors' Facebook sites and removed the State Directors' administrative rights, giving administrative status to Williams.  (Mason Decl. ¶ 6.; Cusick Decl. ¶ 10; Williams Depo. p. 213, l. 9 to p. 214, l. 14.)

71.     Williams failed to turn over the administrative rights to Plaintiff's Facebook sites to the Plaintiff or its State Directors.  (Mason Decl. ¶ 7; Cusick Decl. ¶ 13; Ilacqua Decl. ¶ 74(A); Williams Depo. p. 213, l. 9, to p. 214, l. 14; p. 232, l. 6 to l. 15.)

72.     Not only has Williams converted those Facebook pages to her own use, but she has changed the profile name to reflect her new pageant Cosmos.  (Cusick Decl. ¶¶ 12-14 ; Williams Depo. p. 229, l. 17 – p. 230, l. 4).

73.     These Facebook pages contain content uploaded by Plaintiff's State Directors

and contestants bearing Plaintiff's trademarks and tradenames, while using the Cosmos logo and name on the top of the same page.  (Cusick Decl. ¶¶ 14-15 and Ex. U; Lewellen Decl. ¶¶ 10-11 and Ex. Z; Demanchick Decl. Ex. FF.)  Google's search page lists these Facebook pages as being administered by both Plaintiff and Cosmos as co-owners of the same Facebook pages. (Demanchick Decl. Ex. GG.)

74.    Williams, Crown Garland and Cosmos also converted Plaintiff's Twitter and Instagram pages, which also list both Plaintiff's trademarks and the Cosmos pageant under the same user accounts.  (Demanchick Decl. Ex. EE.)

75.    As a result, Plaintiff's social media sites now contain Plaintiff's Trademarks mixed with Cosmos pageant logos and references.  *Id.*

76.    Plaintiff's social media sites, which previously linked to Plaintiff's website to allow contestants to sign up as contestants/customers of Plaintiff's pageants, were revised to link to Cosmos' website, which includes a form to sign up as a contestant/customer of Cosmos.  (Ilacqua Decl. ¶ 62, Cusick Decl. ¶¶  7, 14 and Ex. U; Demanchick Decl. ¶ 8, 9, 10 and Ex. CC, FF.)

77.    Williams and Crown Garland's misappropriation of Plaintiff's trademarks and social media has created actual confusion among consumers/contestants, as evidenced by two Facebook posts asking whether Cosmos is related to Plaintiff.  (Demanchick Decl. Ex. FF, p. 7 (post by Megan Alyssa Braun states "It had United States in the title so I was thinking it may have merged with Cosmos"), and p. 13 (post by Dawne Gray states "Is this still a United States affiliation".)

### Williams and Crown Garland's Conversion of Websites

78.    As the National Director under the 2016 and 2017 Licensing Agreements,

Williams acted as the administrator of several of Mrs. USNP's websites. (Williams Depo., p. 211, l. 5 – 18; p. 214, l. 15 – p. 215, l. 23.)

79.     Under the Licensing Agreements, Williams was required to return the control of all websites to Mrs. USNP upon the termination or expiration of the agreements. (Pl. App. Ex. D § II (k); Ex. E § II (c), (k) and III (e).)

80.     On November 6, 2017, Williams confirmed via email that she would return all websites created by or on behalf of Mrs. USNP in her control or possession within the two weeks leading up to the 2018 National Pageant. (Williams Depo., p. 154, l. 13 to p. 155, l. 21; Pl. App. Ex. J.)

81.     At the time that the Licensing Agreements were terminated, Williams and Crown Garland failed to return or provide administrative rights to the following web sites:

> www.missunitedstatespageants.com
> www.littlemissunitedstatespageant.com
> www.missjrteenunitedstatespageant.com
> www.misspreteenunitedstatespageant.com
> www.missteenunitedstatespageant.com
> www.missunitedstatespageant.com
> www.mswomanunitedstatespageant.com
> www.unitedstatesnationalpageants.com
> www.unitedstatespageants.com
> www.unitedstatespageant.com

(Referred to herein as the "Mrs. USNP Websites".)  (Ilacqua Decl. ¶ 70; *see also* Williams' Response to Plaintiff's Interrogatories, No. 5, admitting that Williams and Crown Garland operated the foregoing websites (Pl. App. Ex. KK.)

82.     Prior   to   the   2018   National   Pageant,   the   websites www.unitedstatespageants.com  and  www.unitedstatespageant.com  contained  information concerning Mrs. USNP's pageants and allowed contestants to sign up to participate in Mrs. USNP's pageant system. (Ilacqua Decl. ¶ 71.)

83.     Just before or during the 2018 National Pageant, Williams and Crown Garland removed all content from the websites www.unitedstatespageants.com and www.unitedstatespageant.com referencing Mrs. USNP or its trademarks, and removed all pages allowing contestants and potential contestants to sign up to participate with Mrs. USNP. (Ilacqua Decl. ¶ 72.)

84.     As of August 6, 2018, the Mrs. USNP Websites were either taken down or displayed a "Farewell from Crown Garland LLC" message.  (Demanchick Decl., Ex. BB; Williams Depo. p. 23, l. 14 to p. 24, l. 15.)

85.     The time-period during and immediately following Mrs. USNP's National Pageant is historically a time when a significant number of new contestants sign up for the next year's pageants.  (Ilacqua Decl. ¶ 74.)

86.     After the commencement of this lawsuit, Williams and Crown Garland allowed some of the website domain names to expire, which were purchased by Plaintiff. (Williams Depo., p 216, l. 12 – p. 217, l. 5.)

87.     Presently, Williams and Crown Garland continue to hold and are refusing to turn over the rights to the following three domain names: www.missunitedstatespageants.com, www.missunitedstatespageant.com, and www.unitedstatesnationalpageants.com.  (Williams Depo., p. 217, l. 6 – 218, l. 25.)

**Failure to Return Other Materials**

88.     In March 2018, Mrs. USNP set up an online internet-based portal using document management software to allow Williams and Crown Garland to return all materials, intellectual property, and administrative rights as required under the 2016 and 2017 Licensing Agreements. The portal identified different categories to upload information and

documents.  (Ilacqua Decl. ¶ 78; Pl. App. Ex. K).

89.     Despite the requests of Mrs. USNP, Williams and Crown Garland have failed to return materials and information including without limitation:

(a)  Videos of contestants in connection with the 2018 National Pageant (Williams Depo. p. 238, l. 17 to l. 22; p. 241, l. 6 to p .242 l. 6);

(b)  Financial records (Williams Depo. p. 242, l. 22 to l. 25);

(c)  Logos (Williams Depo. p. 242, l. 3 to l. 5);

(d)  Contracts with hotels, sponsors, and suppliers (Williams Depo. p. 243, l. 25 to p. 244 l. 14);

(e)  Lists of prospective contestants for all divisions identifying persons who indicated they were interested in participating in Plaintiff's pageants. (Ilacqua Decl. ¶ 79; Williams Depo p. 246, l. 2 to l. 8);

(f)  State director agreements for all divisions (Williams Depo. p. 247, l. 13 to l. 16);

(g)  Additional documents utilizing Plaintiff's Trademarks and created pursuant to the  2016 and 2017 Licensing Agreements, including without limitation:  files, forms, and databases, which were generated during the term of the subject Licensing Agreements and/or generated utilizing Mrs. USNP's Trademarks; all contracts with titleholders or delegates; promotional items; marketing materials; all contracts entered during the term of the agreements, including contracts with sponsors, suppliers and hotels; and comprehensive contestant rolls, constituting each pageant participant's name, address, phone number, email, date of birth, and the state they represented for each division.  (Ilacqua Decl. ¶ 79.)

## UNDISPUTED FACTS IN CONNECTION WITH DEFENDANTS' COUNTERCLAIMS AND THIRD-PARTY CLAIMS

### No Oral Agreement

90.     Ilacqua never entered into any agreement on behalf of Mrs. USNP with Williams or Crown Garland to reimburse them for any alleged registration fees, including any such fees allegedly paid to a third party. (Ilacqua Decl. ¶ 92.)

91.     Defendants claim that this alleged representation occurred in or around 2015, prior to the execution of the 2016 or 2017 Licensing Agreement.  (Williams Depo., p. 70, l. 17 – p. 71, l. 4.)

92.     The 2016 Licensing Agreement and 2017 Licensing Agreement do not state that defendants are entitled to reimbursement for any alleged registration fees generated in 2015 or at any time prior to the execution of said agreements. (Ex. D, Ex. E)

93.     The 2016 Licensing Agreement states that it "contains the entire understanding of the Parties and supersedes all prior agreements and understandings, whether written or oral with regard to the subject matter hereof."  (Ex. D, ¶ III(e).)

### Advertising and Logos

94.     Under the 2016 and 2017 Licensing Agreements, Williams and Crown Garland were required to "promote, finance and produce" the pageant competitions.  (Ex. D, ¶ II(a); Ex. E, ¶ II(a)).

95.     Willliams claims that she created logos incorporating Plaintiff's Trademarks prior to entering the Licensing Agreements.  (Williams Depo. p. 95, l. 9 to l. 24.)

96.     At the time Williams created the logos, there was no agreement with Mrs. USNP indicating that she would be reimbursed for associated costs. (Williams Depo. p. 92, l. 12 to l. 15.)

97.    The 2016 Licensing Agreement and 2017 Licensing Agreement do not state that Williams or Crown Garland is entitled to reimbursement for expenditures related to advertising or the creation of logos. (Williams Depo. p. 260, l. 6 to l. 14; *and see* the agreements at Ex. D, Ex. E).

Dated: December 10, 2021

**ADAMS LECLAIR LLP**

s/ Stacey E. Trien
Paul L. Leclair, Esq.
Stacey E. Trien, Esq.
Robert P. Yawman, Esq.
*Attorneys for Plaintiff and*
*Third-Party Defendant*
28 E. Main St., Suite 1500
Rochester, New York 14614
pleclair@adamsleclair.law
strien@adamsleclair.law
ryawman@adamsleclair.law
585-327-4100
585-327-4200 fax