UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MRS. UNITED STATES NATIONAL
PAGEANT, INC.,

                            Plaintiff,

       v.

STEPHANIE L. WILLIAMS, et al.,

                            Defendants.
_____

DECISION & ORDER

18-CV-6587MWP

## INTRODUCTION

Plaintiff Mrs. United States National Pageant, Inc. ("USNP"), a producer of beauty pageants and owner of various trademarks associated with the pageant business, filed this action on August 13, 2018 against defendants Stephanie L. Williams ("Williams"), a former licensee of USNP, and Crown Garland LLC ("Crown Garland") and Cosmos International Pageants, Inc. ("Cosmos"), two pageant businesses operated by Williams, alleging trademark infringement, unfair competition, violations of New York General Business Law Section 349, misappropriation of trade secrets, breach of contract relating to the parties' 2016 and 2017 license agreements, tortious interference with contracts, tortious interference with prospective contractual relations, injurious falsehood, conversion, replevin, unjust enrichment, and breach of fiduciary duty. (Docket # 1). On February 26, 2020, defendants filed an Amended Answer with Counterclaims against USNP and third-party claims against third-party defendant Anthony Ilacqua ("Ilacqua"), who worked as USNP's Director of Operations, alleging breach of oral agreement, unjust enrichment, and tortious interference with contractual relations. (Docket

# 45). The numerous claims, counterclaims and third-party claims arise from and relate to the deterioration and termination of the relationship between the parties and the alleged consequences thereof.

Following proceedings relating to USNP's motion for injunctive relief (Docket ## 7, 8, 18, 21, 25, 26) and completion of discovery, the parties filed competing motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] (Docket ## 62, 63). Specifically, defendants moved for dismissal of all USNP's causes of action and for judgment in their favor on their counterclaim and third-party claim for tortious interference with contractual relations (*see* Docket # 62), and USNP and Ilacqua[2] sought dismissal of defendants' counterclaims and third-party claims and judgment in their favor on each of USNP's causes of action except those for misappropriation of trade secrets, replevin, and unjust enrichment (*see* Docket # 63). The motions were held in abeyance for several months at USNP's request due to the withdrawal of USNP's former counsel. (Docket ## 69-84).

This Court conducted oral argument on the parties' dispositive motions on July 14, 2022. (Docket # 90). At argument, USNP withdrew its claims for misappropriation of trade secrets and breach of fiduciary duty, and those claims were dismissed with prejudice. (Docket ## 89, 90). After lengthy argument, this Court resolved the motions with respect to all the claims except one – defendants' fourth counterclaim for tortious interference with contractual relations. (*Id.*). With respect to the resolved claims, this Court determined that genuine disputes of material fact existed that precluded judgment as a matter of law on (1) USNP's claim for breach

---

[1] On July 24, 2019, the parties consented to the disposition of this case by a United States magistrate judge, pursuant to 28 U.S.C. § 636(c). (Docket # 32).

[2] For ease of reference, this Court shall refer to plaintiff USNP and third-party defendant Ilacqua together as "plaintiffs." Reference to "plaintiff" means USNP.

of contract based upon defendants' alleged breaches of the 2016 and 2017 license agreements with USNP requiring defendants to promote, finance and produce state and national beauty pageants, to pay registration fees owed to USNP under the agreements, to turn over materials to USNP upon the conclusion of the July 2018 national pageant, and to act in accordance with their duty of good faith and fair dealing (Docket # 1, Eighth Cause of Action, at ¶¶ 173-76) and (2) defendants' claim for breach of oral agreement (Docket # 45, First Counterclaim, at ¶¶ 141-45).  (Docket ## 89, 90).  The Court dismissed the remainder of the parties' claims.  (*Id.*).

This Court granted the parties' requests to submit supplemental briefing on the one claim as to which the Court reserved judgment.  (*Id.*).  The Court has now considered the supplemental memoranda (Docket ## 92, 93) and finds, for the reasons explained below, that triable issues of fact preclude summary resolution of that claim.  Familiarity with the parties' pleadings and the prior proceedings, including the parties' summary judgment motions, the arguments and positions advanced and concessions made at oral argument, and this Court's decision on the resolved motions, is assumed.[3]

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In reaching this determination, the court must assess whether there are any disputed material facts and, in so doing, must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49

---

[3] The district court's decision denying USNP's motion for injunctive relief summarizes the factual background of the parties' relationship and this litigation.  *See Mrs. United States Nat'l Pageant, Inc. v. Williams*, 353 F. Supp. 3d 213, 215-17 (W.D.N.Y. 2019).

(1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166-67 (2d Cir. 1991).  A fact is "material" only if it has some effect on the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see also Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d at 97.

    The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, after which the non-moving party must come forward with sufficient evidence to support a jury verdict in its favor; the motion will not be defeated based upon conjecture, surmise or the existence of "metaphysical doubt" concerning the facts.  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), *cert. denied*, 502 U.S. 849 (1991).  The party seeking to avoid summary judgment "must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 . . . , that there are specific factual issues that can only be resolved at trial."  *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995), *abrogated on other grounds by Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020); *see also Driscoll v. Townsend*, 60 F. Supp. 2d 78, 80 (W.D.N.Y. 1999).  As the Second Circuit has explained:

> [T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution . . . .  [I]t must be kept in mind

>that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute.

*Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## **DISCUSSION**

Both sides seek judgment as a matter of law in their favor on defendants' fourth counterclaim for tortious interference. (Docket ## 62, 63). At oral argument, the Court questioned counsel for defendants as to the legal basis for the counterclaim. Counsel responded that the counterclaim purports to assert a claim for tortious interference with defendants' *contractual* relationships with Cosmos's state directors, notwithstanding that in the Amended Answer the claim is entitled, "Tortious Interference with *Business* Relationships." (*See* Docket # 45 at 19 (emphasis added)). As the Court suspected from its review of USNP's motion papers (*see* Docket ## 63-49 at 35-36; 86 at 40-42), and plaintiffs' counsel confirmed at oral argument, plaintiffs had interpreted the counterclaim as it had been captioned, rather than as a claim for interference with existing contractual relations.

The difference is significant, and not merely semantic, because the two types of claims are judged under different standards, and the standard applicable to claims for interference with business relationships is more demanding than the standard applicable to tort claims of interference with contractual relations. *See Rockland Exposition, Inc. v. All. of Auto. Serv. Provider of N.J.*, 894 F. Supp. 2d 288, 332 (S.D.N.Y. 2012) ("the Second Circuit has explained that the 'wrongful means' requirement [obligating the plaintiff to establish that the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means] makes proving a claim for interference with prospective business relationships 'more demanding' than a claim for interference with existing contracts") (quoting *Catskill Dev., LLC v. Park Place Ent.*

5

*Corp.*, 547 F.3d 115, 132 (2d Cir. 2008), *cert. denied*, 556 U.S. 1166 (2009)). *See also Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004) ("where a suit is based on interference with a nonbinding relationship, the plaintiff must show that defendant's conduct was not 'lawful' but 'more culpable[,]' . . . [and] [c]onduct that is not criminal or tortious will generally be 'lawful' and thus insufficiently 'culpable' to create liability for interference with prospective contracts or other nonbinding economic relations") (quoting *NBT Bancorp, Inc. v. Fleet/Norstar Fin. Grp.*, 87 N.Y.2d 614 (1996)).  When this misconception was confirmed at argument, counsel accepted the Court's invitation to submit supplemental briefing addressing the now-clarified claim.

        As pled in the Answer, the fourth counterclaim asserts that USNP and Ilacqua (1) were aware of "the contracts and/or ongoing business relationships" between defendants and pageant contestants, state directors for Cosmos, and "vendors that [d]efendants had used at prior pageants," (2) "purposely interfered with [d]efendants' business relationships with prior pageant contestants, state directors and vendors, for the purpose of terminating those parties' contracts and/or business relationships with [d]efendants," and (3) thereby "damage[d]" or caused "the termination of [d]efendants' contractual and/or business relationships."  (Docket # 45 at ¶¶ 156-58).  Defendants' supplemental brief, consistent with their position at oral argument, clarifies that the gist of the counterclaim is that USNP and Ilacqua tortiously interfered with oral contracts between Williams and her company Crown Garland, on the one hand, and individuals who had agreed to serve as state directors for Cosmos pageants for the year 2020, on the other hand.  (*See* Docket # 93-3).  Defendants' supplemental memorandum does not mention pageant contestants, vendors, or business relationships with either group.  (*Id.*).  This Court will construe the fourth counterclaim as clarified and narrowed by defendants.

USNP and Ilacqua move for judgment as a matter of law on the grounds that defendants have not raised triable issues of fact that they were aware of any oral contracts for 2020 between defendants and Cosmos state directors, that they acted with malice or illegally, rather than in their own economic interest, and that they did not rely in good faith upon advice of counsel. (Docket # 92). Defendants, by contrast, argue that there are no triable issues of fact to the contrary. (Docket # 93-3). In the alternative, defendants request that, in the event that their motion is denied and the fourth counterclaim proceeds to trial, the Court unseal all documents submitted to the Court in connection with plaintiff's former counsel's motion to withdraw and "issue an[] order finding that [p]laintiff has waived attorney client privilege with regard to all documents concerning communications between [p]laintiff, Mr. Ilacqua, or their counsel regarding their communications with the Cosmos state directors in 2018 and 2019." (*Id.* at 10-11).

In order to establish liability for tortious interference with contractual relations under New York law, a plaintiff must prove the following elements:

> (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom.

*Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-402 (2d Cir. 2006) (internal quotations omitted) (citing *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996)). "Intentional procurement of a breach is an essential element of the tort of interference with contractual relations. A plaintiff must allege that there would not have been a breach but for the activities of the defendants." *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990) (internal quotations omitted), *cert. denied*, 499 U.S. 907 (1991).

With respect to the type of conduct that meets the third element, the Second Circuit has emphasized that "the alleged interference must be intentional, not merely negligent or incidental to some other, lawful, purpose." *S.A.R.L. Galerie Enrico Navarra v. Marlborough Gallery Inc.*, 751 F. App'x 39, 40 (2d Cir. 2018) (summary order) (internal quotations omitted). "The inducement causing the breach may be any conduct conveying to the third person the actor's desire to influence him not to deal with the other," *St. John's Univ., N.Y. v. Bolton*, 757 F. Supp. 2d 144, 173 (E.D.N.Y. 2010) (internal quotations omitted), but must amount to "a showing that the inducement exceeded a minimum level of ethical behavior in the marketplace," *White Plains Coat & Apron Co. v. Cintas Corp.*, 8 N.Y.3d 422, 427 (2007) (internal quotations omitted). "On this element, as with any other, a non-movant must point to more than mere speculation or conjecture as to the true nature of the facts in order to survive summary judgment," and "where facts raising a question of intent are shown, summary judgment is generally inappropriate . . . because intent is always a subjective matter of inference." *S.A.R.L. Galerie Enrico Navarra v. Marlborough Gallery Inc.*, 751 F. App'x at 40 (internal quotations omitted).

A defendant may assert an economic interest defense to the claim. *White Plains Coat & Apron Co. v. Cintas Corp.*, 8 N.Y.3d at 426. To succeed, the defendant must demonstrate that "it acted to protect its own legal or financial stake in the breaching party's business." *Id.* Absent such a stake in the breaching third-party's business, a competitor of the plaintiff who induces the breach to further its own economic interest may not prevail on the defense. *Id.* "In other words, mere status as plaintiff's competitor is not a legal or financial stake in the breaching party's business that permits defendant's inducement of a breach of contract." *Id.*

In this case, plaintiffs contend that defendants have not come forward with sufficient evidence to raise a triable issue of fact that plaintiffs knew of the oral contracts between defendants and the Cosmos state directors that defendants claim plaintiffs induced the state directors to breach. (Docket ## 92 at 3; 92-1 at ¶ 1). Plaintiffs appear to contest the adequacy of the evidence as to their knowledge – not of the existence of Cosmos state director agreements for the earlier 2019 pageant year (which they do not specifically address) – but of the existence of the continued contractual relationships for the subsequent 2020 pageant year. (*Id.*). I agree with defendants that the evidence is sufficient to withstand judgment as a matter of law in favor of plaintiffs.

As an initial matter, defendants have pled the element of knowledge in their Amended Answer. Specifically, they have alleged, "[USNP] and Anthony Ilacqua were also aware of the contracts . . . between [d]efendants and the state directors for Cosmos." (Docket # 45 at ¶ 156). As the Amended Answer further alleges, "[Ilacqua] also threatened every one of [the] state directors with litigation and ruin to their personal reputation if they continued to work with Ms. Williams or Cosmos." (*Id.* at ¶ 136). Sworn affidavits from two of the state directors submitted in support of defendants' motion for summary judgment affirm that they had orally agreed with defendants to continue to serve as Cosmos state directors for the 2020 pageant year but subsequently broke their commitments when plaintiffs' counsel threatened to sue them. (Docket ## 62-25 at ¶¶ 11, 17; 62-28 at ¶¶ 11, 17). A supplemental sworn affidavit from one of the two directors, Teri Brown-Walker, clarifies that Ilacqua's counsel spoke to her about the lawsuit plaintiffs intended to file if she did not cease working with defendants and told her on or about August 30, 2019 that the lawsuit would not be instituted if she "resigned from [her] oral agreement to serve as a state director for Cosmos for the 2019 to 2020 pageant year." (Docket

# 93-2 at ¶ 7). Moreover, the record in this case contains multiple admissions that Ilacqua directed counsel "to send additional letters to the [state directors] . . . advising of [USNP's] intent to file a lawsuit in federal court." (*See* Docket ## 63-2 at ¶ 83; 86-2 at ¶ 22). The draft complaint that plaintiffs' counsel sent to the state directors by letter dated July 2, 2019 explicitly alleged that the defendant state directors "breached their [agreements with USNP] by engaging in business which conducts a competitive pageant [and] *by contracting with*, providing services to, and performing marketing and promotional services for one or more competing pageants." (Docket # 62-25 at ¶ 45 (emphasis added)). These assertions – that counsel's communications with Cosmos state directors about the threatened litigation occurred at the direction of Ilacqua and included an acknowledgement of one of the state director's agreement for the 2020 pageant year – amount to sufficient evidence to give rise to a reasonable inference that plaintiffs, the clients whom counsel was representing during the communications, knew of the continued contractual relationship between defendants and certain of the Cosmos state directors.

        In reaching the judgment that defendants have adduced adequate evidence to withstand judgment as a matter of law, I assume that defendants are required under New York law to prove Ilacqua's actual knowledge and may not rely on a theory of imputation from attorney to client. *See*, *e.g.*, *Roche Diagnostics GmbH v. Enzo Biochem, Inc.*, 992 F. Supp. 2d 213, 221 (S.D.N.Y. 2013) ("constructive knowledge" is inadequate for tortious interference claim); *TechnoMarine SA v. Jacob Time, Inc.*, 2013 WL 5231471, *5 (S.D.N.Y. 2013) (second element of tortious interference claims requires proof of "actual knowledge of the specific contract"; applying New York law) (quoting *LinkCo, Inc. v. Fujitsu Ltd.*, 230 F. Supp. 2d 492, 495 (S.D.N.Y. 2002)); *Medtech Prods., Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 796 n.13 (S.D.N.Y. 2008) ("New York law is clear on its requirement that a defendant charged with

tortiously interfering with a contractual relationship have *actual knowledge* of the breached contract") (emphasis in original). In other words, at trial defendants will have to prove that Ilacqua actually knew of the 2020 Cosmos state director agreements; while the evidence upon which defendants rely does not need to be direct, as opposed to circumstantial, it still must be adequate proof from which a trier of fact may reasonably infer Ilacqua's actual knowledge.

Second, plaintiffs argue that judgment in their favor is warranted due to the absence of evidence that they acted with malice; rather, in their view, the evidence conclusively establishes that they relied upon advice of counsel in their communications with the state directors concerning threatened litigation. I disagree that the record evidence demonstrates as a matter of law the merits of their advice-of-counsel defense. "[T]o benefit from an advice-of-counsel defense, a party must show that he (1) 'honestly and in good faith' sought the advice of counsel; (2) 'fully and honestly la[id] all the facts before his counsel'; and (3) 'in good faith and honestly follow[ed]' counsel's advice, believing it to be correct and intending that his acts be lawful." *United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012) (quoting *Williamson v. United States*, 207 U.S. 425, 453 (1908)).

The success or failure of the advice-of-counsel defense will involve consideration by the jury of the facts and information that plaintiffs provided to counsel and the specifics of counsel's advice, along with the reasonableness of plaintiffs' purported reliance on that advice.[4] *See*, *e.g.*, *Trouble v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 304 (S.D.N.Y. 2001) ("[w]hen a party intends to rely at trial on the advice of counsel as a defense to a claim of bad faith, that advice becomes a factual issue"); *Matsushita Elecs. Corp. v. Loral Corp.*, 1995 WL 527640, *2

---

[4] Plaintiffs suggest that their economic interest defense turns on advice of counsel. (Docket # 92 at 4). Insofar as advice of counsel may be relevant to that defense, the merits of defense cannot be determined at this stage as a matter of law.

11

(S.D.N.Y. 1995) (addressing advice-of-counsel defense to tortious interference claim; "[f]irst, if the advice rendered was in part oral . . . , there will inevitably be some question as to what the attorney actually told the client; . . . [s]econd, the advice-of-counsel defense requires the defendant to establish that his reliance on that advice was reasonable[,] [a] determination [that] may turn on a variety of considerations, one of which may involve the question of what information was known to the attorney when he formulated his opinion"). With respect to the question of the reasonableness of a party's reliance on advice of counsel, one court has aptly noted:

> If the client . . . misstated the facts, it can scarcely be permitted to invoke an advice-of-counsel defense based on advice that it procured by such misrepresentations. Moreover, if the advice turned on assumptions made by an attorney that the client had reason to know were incorrect, an argument could be made that the reliance was unreasonable even if the attorney did not explicitly reveal his assumptions to the client.

*Matsushita Elecs. Corp. v. Loral Corp.*, 1995 WL 527640 at *3 n.3. Considering the questions of fact that underlie the advice-of-counsel defense, and the paucity of record evidence on the issues (let alone undisputed record evidence), plaintiffs are not entitled to judgment as a matter of law on the defense.

Just as Ilacqua's state of mind and intent are questions of fact that preclude judgment in favor of plaintiffs at this stage, those same questions preclude judgment as a matter of law in favor of defendants. As this Court understands defendants' position, they contend that the litigation threatened by plaintiffs' counsel was so obviously frivolous that plaintiffs are foreclosed from relying on an advice-of-counsel defense (*see* Docket # 93-3 at 4). *See Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 797 F.2d 70, 75 (2d Cir.) ("it is clear that under New York law litigation or the threat of litigation can give rise to a claim for tortious interference with

contractual relations[;] . . . a lawsuit or the threat of a lawsuit is wrongful if the actor has no belief in the merit of the litigation . . . [or] if the actor, having some belief in the merit of the suit, nevertheless institutes or threatens to institute the litigation in bad faith, intending only to harass the third parties and not to bring his claim to definitive adjudication") (internal quotations omitted) (citing *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191 (1980)), *cert. denied*, 479 U.S. 987 (1986). Again, the success of that contention will depend upon an assessment of the evidence adduced at trial – namely, what counsel told plaintiffs, and what they in turn understood about the legal and factual bases supporting the threatened litigation, and whether that understanding was reasonable. Resolution at this stage is premature. *See*, *e.g.*, *Bath & Body Works Brand Mgmt., Inc. v. Summit Ent., LLC*, 2013 WL 3479418, *5 (S.D.N.Y. 2013) (denying motion for summary judgment dismissing advice-of-counsel defense; "[t]hat this inference chain is circumstantial only means that [the party's] reliance [on advice-of-counsel] argument may have potential gaps, not that [the party] is precluded as a matter of law from presenting its admissible evidence and making this argument to a jury").

As a final matter, I turn to defendants' request for a ruling that plaintiffs have waived their right to assert attorney-client privilege as to communications with their former counsel Paul L. Leclair, Esq., and the law firm Woods Oviatt Gilman, LLP, and must disclose all communications with counsel on the issue of threatened litigation with Cosmos state directors, including documents submitted *in camera* to the Court in connection with Mr. Leclair's motion to withdraw. (Docket # 93-3 at 8-10). The law is settled that reliance upon advice of counsel as a defense operates as an implied waiver. *See*, *e.g.*, *In re County of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) ("[t]he assertion of an advice-of-counsel defense has been properly described as a quintessential example of an implied waiver of the privilege") (internal quotations omitted)

(citing *In re Kidder Peabody Secs. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996)). That a party sought advice of counsel does not alone waive privilege; rather, the central question is whether the party "intends to invoke reliance upon counsel as a . . . defense." *Gardner v. Major Auto. Cos., Inc.*, 2014 WL 1330961, *4 (E.D.N.Y. 2014). In this case, plaintiffs' supplemental submission removes any doubt on that question. (Docket # 92 at 6 ("Based upon 'advice of prior counsel,' [plaintiffs] should be permitted to give evidence in exculpation of their conduct, such that they acted in good faith further reliance upon their counsel or as a result of a mistake of their counsel.")).

Unless plaintiffs affirmatively disclaim reliance on an advice-of-counsel defense, they must disclose documents reflecting and concerning communications between USNP and Ilacqua and their counsel regarding correspondence and contacts with Cosmos state directors about their purported obligations to USNP, their work as state directors for Cosmos, and the possibility of litigation against them. *See Trouble v. Wet Seal, Inc.*, 179 F. Supp. 2d at 304 ("opposing counsel is entitled to know not only whether such an opinion was obtained but also its content and what conduct it advised") (internal quotation omitted). Counsel for both sides must confer with respect to disclosure of such materials. In the event that any dispute arises concerning these disclosure obligations, counsel may file a formal motion for relief provided that they have first conferred with opposing counsel and attempted in good faith to resolve the dispute without court intervention.

## CONCLUSION

For these reasons, the parties' cross-motions for judgment as a matter of law pursuant to Fed. R. Civ. P. 56 on defendants' Fourth Counterclaim **(Docket ## 62, 63)** are **DENIED**.  A **trial date status conference** will be held with the undersigned on **October 18, 2022**, at **1:30 p.m.**

**IT IS SO ORDERED.**

                                                   *s/Marian W. Payson*
                                                    MARIAN W. PAYSON
                                               United States Magistrate Judge

Dated: Rochester, New York
         September 9, 2022